S92A0682. HARDAWAY COMPANY v. RIVES et al.
(422 SE2d 854)

BELL, Presiding Justice.

The dispositive question in this appeal is whether certain documents prepared by appellee Georgia Department of Transportation (hereinafter DOT) are exempt from disclosure under the Open Records Act, OCGA Ch. 50-18, Art. 4, as "secrets of state," OCGA §

24-9-21 (4), or "state matters of which the policy of the state and the interest of the community require concealment," OCGA § 24-9-27 (d). The trial court granted summary judgment to appellees on the ground that the documents are exempt under §§ 24-9-21 and 24-9-27. For the following reasons, we conclude that those statutes do not exempt the documents from disclosure under the Open Records Act, and we therefore reverse the judgment.

Appellant the Hardaway Company is a construction company which was DOT"s general contractor for work on the Talmadge Memorial Bridge in Savannah. After a dispute developed between appellant and DOT concerning claims for payment, appellant filed suit against appellees, seeking an injunction to compel appellees to disclose documents pursuant to the Open Records Act. The documents, which are collectively identified as the "Engineer's Cost Estimate" (hereinafter ECE), were generated by DOT as part of the process of evaluating bids for work on the bridge. The documents include a list of the costs that formed the basis of DOT"s estimate, and supporting calculations. The trial court granted summary judgment to appellees and denied appellant's cross-motion for summary judgment. In support of its judgment, the court found that compelling disclosure of the ECE would be contrary to the public interest because it would reveal the methodology and formulas DOT used in arriving at the ECE, and thereby would compromise the bidding process for future projects by impairing DOT"s ability to evaluate bids. Appellant appealed the judgment.

1. We begin by outlining the steps in analysis of Open Records Act cases. OCGA § 50-18-70 (b) provides that

> [a]ll state . . . records, except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection by the general public, shall be open for a personal inspection by any citizen of this state at a reasonable time and place; and those in charge of such records shall not refuse this privilege to any citizen.

Another statute, OCGA § 50-18-72, sets forth a list of instances in which disclosure of public records is not required, but the list is not exhaustive, as prohibitions or exemptions from disclosure may be found in other areas of the code, see generally *Napper v. Ga. Television Co.*, 257 Ga. 156, 165-169 (2) (356 SE2d 640) (1987) (discussing whether disclosure was prohibited or exempted by various statutes other than § 50-18-72).

In suits under the Open Records Act, the first inquiry is whether the records are "public records." *Napper*, supra, 257 Ga. at 160. If they are public records, the second inquiry is whether they are pro-

tected from public disclosure pursuant to §§ 50-18-70 or 50-18-72. Id. If they are not exempt under the list of exemptions found in § 50-18-72 or under any other statute, then the question is whether they should be protected by court order under § 50-18-70, *Napper* at 161, but only if there is a claim that disclosure of the public records would invade individual privacy, *Bd. of Regents v. Atlanta Journal & Const.*, 259 Ga. 214, 216-218 (4) (378 SE2d 305) (1989); *Ga. Hosp. Assn. v. Ledbetter*, 260 Ga. 477, 479 (5) (396 SE2d 488) (1990). In the instant case, appellee concedes that the ECE is a public record; that no question of individual privacy is present; and that the only possible statutory exemption from disclosure of the ECE would be found in §§ 24-9-21 and 24-9-27. Thus, the applicability of the latter Code sections is the dispositive issue.

Section 24-9-21 states that "[t]here are certain admissions and communications excluded on grounds of public policy. Among these are: . . . *[s]ecrets of state*. . . ." Section 24-9-27 (d) provides that "[n]o official persons shall be called on to disclose any state matters of which the policy of the state and the interest of the community require concealment." For the following reasons, we decline to construe either of these statutory privileges as exempting public records from disclosure.

2. The term "secrets of state" in § 24-9-21 (4) is not defined therein, but a common definition of the term is that it refers to matters of national security, such as military and diplomatic information, see generally 81 AmJur2d 537, Witnesses, § 533. However, it is apparent that this definition cannot be the legislatively intended meaning in the Georgia Code, as a close variant of the term, "confidential state secrets," has been used in statutes that concern subjects at a lower level than national or state security, see OCGA § 42-5-36 (confidentiality of information supplied by inmates to the Department of Corrections);[1] OCGA § 42-9-53 (confidentiality of information received by

---

[1] Section 42-5-36 provides that

(a) Officials and employees of the department [the Department of Corrections] shall respect the confidential nature of information supplied by inmates who cooperate in remedying abuses and wrongdoing in the penal system. Any official or employee who breaks such a confidence and thereby subjects a cooperating inmate to physical jeopardy or harassment shall be subject to suspension or discharge.

(b) Investigation reports and intelligence data prepared by the Internal Investigations Unit of the department shall be classified as *confidential state secrets and privileged under law*, unless declassified in writing by the commissioner.

(c) All institutional and inmate files and central office inmate files of the department shall be classified as *confidential state secrets and privileged under law*, unless declassified in writing by the commissioner; provided, however, these records shall be subject to subpoena by a court of competent jurisdiction of this state. [Emphasis supplied.]

the State Board of Pardons and Paroles).[2] But see OCGA § 16-11-9 (confidentiality of information on subversive activities received by special assistant attorney general).[3] Thus, assuming that the term "secrets of state" in § 24-9-21 (4) means something other than matters of national or state security, the issue is whether it effects an exemption from the Open Records Act. We find that it does not, because construing the term as such an exemption would be unresponsive to the legislative intent underlying the Open Records Act.

(a) The key to determining this question is found in § 50-18-72, which "directs a narrow construction of its exclusions, exempting '*only* that *portion* of a public record to which an exclusion is *directly* applicable.' [Cit.]" *Bd. of Regents*, supra, 259 Ga. (3b) at 215 (quoting former § 50-18-72 (f), now § 50-18-72 (g)). This direction is by its terms applicable only to the exemptions listed in § 50-18-72, but we find that it would be incongruous were the same standard of narrow construction not applied to exemptions found in other parts of the Code. Moreover, § 50-18-70 (b) requires that all public records shall be disclosed except those which "by law are prohibited or *specifically* exempted from being open to inspection by the general public." (Emphasis supplied.) Accordingly, we conclude that *any* purported statutory exemption from disclosure under the Open Records Act must be narrowly construed.

---

[2] Section 42-9-53 provides that

(a) . . . .

(b) All information, both oral and written, received by the members of the board in the performance of their duties under this chapter and all records, papers, and documents coming into their possession by reason of the performance of their duties under this chapter shall be classified as *confidential state secrets* until declassified by a resolution of the board passed at a duly constituted session of the board; provided, however, that the board shall be authorized to disclose to an alleged violator of parole or conditional release the evidence introduced against him at a final hearing on the matter of revocation of parole or conditional release.

(c) No person shall divulge or cause to be divulged in any manner any *confidential state secret*. Any person violating this Code section or any person who causes or procures a violation of this Code section or conspires to violate this Code section shall be guilty of a misdemeanor.

(d) . . . All records and documents which were public records at the time they were received by the board are exempt from subsection (b) of this Code section. All information, reports, and documents required by law to be made available to the General Assembly, the Governor, or the state auditor are exempt from subsection (b) of this Code section. [Emphasis supplied.]

[3] Section 16-11-9 provides that

[t]he Attorney General shall require the special assistant to maintain complete records of all information received by him and all matters handled by him under the requirements of this part. Such records as may reflect on the loyalty of any resident of this state shall not be made public or divulged to any person except with permission of the Governor or the Attorney General to effectuate the purposes of this part. All such records shall be classified as *confidential state secrets* until declassified by the Governor or the Attorney General. [Emphasis supplied.]

In the present case, the most narrow construction of the term "secrets of state" in § 24-9-21 is that it is but a general statement of the more specific "confidential state secrets" exemptions found in §§ 42-5-36; 42-9-53; and 16-11-9. See fns. 1, 2, and 3, supra. Those sections are much more specific in their descriptions of the information that is exempted from disclosure, and also provide specific procedures for disclosure (e.g., "declassification"). Accordingly, we hold that the "secrets of state" privilege of § 24-9-21 (4) does not operate to cloak the ECE with exemption from disclosure under the Open Records Act.

3. The remaining question is whether under § 24-9-27 (d) the ECE is exempt from disclosure as a "state matter[ ] of which the policy of the state and the interest of the community require concealment" (hereinafter "the state matter exemption"). This specification may be intended as an expression of the concept of "executive privilege," see 81 AmJur2d 537, Witnesses, § 534, but, as with the term "secrets of state," the state matter exemption is not defined in the statute itself. It has been judicially construed as authorizing "the nondisclosure of the identity of an informant upon whose information an arrest or search is based [cit.]," *Chancey v. Hancock*, 233 Ga. 734, 736 (3) (213 SE2d 633) (1975), but we have found no other applications.

(a) The difficulty with applying the state matter exemption to withhold the ECE from disclosure is that doing so would be inconsistent with *Bd. of Regents*, supra, 259 Ga. at 216-218, because this case involves no claim of individual privacy. The state matter exemption indicates that each claim of the exemption necessitates inquiring whether "the interest of the community require[s] concealment," i.e., whether the public interest in favor of disclosure substantially outweighs the public interest against disclosure. This inquiry is functionally no different from the "public interest" test established by *Houston v. Rutledge*, 237 Ga. 764 (229 SE2d 624) (1976), the application of which has been disapproved in cases where (as here)

> there is no claim on behalf of any individual of an invasion of personal privacy [fn.]. It is not a *personal* right to privacy that is urged upon us, but rather a *corporate* preference for privacy, which is considered to be desirable for the efficacious administration of a public function. [*Bd. of Regents*, supra, 259 Ga. at 217.]

(b) We have noted the special concurrence of Justice Fletcher, and we are in agreement with him to the extent that he finds that the public interest in exempting ECEs from disclosure until projects are completed or abandoned outweighs the public interest in favor of disclosure. However, unlike the author of the special concurrence, we do

not find that we have the discretion to judicially craft such an exemption. The balancing test which the special concurrence urges us to apply was expressly limited by *Bd. of Regents* to instances where individual privacy rights were involved.

(c) Accordingly, we hold that the state matter exemption may not be applied in the present case, as allowing such an exemption would serve to disregard the rule of *Bd. of Regents*.

4. For the foregoing reasons, the ECE does not qualify for exemption from disclosure under the Open Records Act either as a "secret of state" or a "state matter."[4] Accordingly, the judgment of the trial court granting appellees' motion for summary judgment and denying appellant's cross-motion for summary judgment is hereby reversed.

*Judgment reversed. All the Justices concur, except Hunt and Fletcher, JJ., who concur specially; Hunstein, J., not participating.*

FLETCHER, Justice, concurring specially.

OCGA § 24-9-27 (d) provides: "No official persons shall be called on to disclose any state matters of which the policy of the state and the interest of the community require concealment." The community's interest in competitive prices requires concealment of the state's estimate of a public project's construction costs. Sealed bids on public construction projects are essential to ensure the integrity of the bidding process and to bar cronyism and corruption. Therefore, I conclude that the exception for state matters precludes disclosure of the engineer's cost estimate prior to the completion of any state construction project.

1. This court has interpreted the Open Records Act as requiring a balancing of the public interest in favor of inspection against the public interest in favor of non-inspection. *Houston v. Rutledge*, 237 Ga. 764, 765 (229 SE2d 624) (1976). As the state points out, the public has an interest in ensuring that the Department of Transportation awards contracts to the lowest reliable bidder. This interest outweighs any public interest in the disclosure of the engineer's cost estimate prior to the end of construction. If construction companies bidding on projects were allowed to see the engineer's cost estimate prior to the bid opening, competitive bidding would be eliminated. If access to the estimate were allowed during the construction, then the winning contractor and subcontractors would tailor their bills to the state's cost estimate of the work. In both instances, premature disclosure of the cost estimate would undermine the state policy and public's interest in having state projects built at the most competitive price.

The state matter exemption, like other exemptions to the Open

---

[4] We note that this holding in no way forecloses the General Assembly from amending § 50-18-72 to exempt engineering estimates for construction transactions.

Records Act, must be narrowly construed. See OCGA § 50-18-72 (g). As a result, the public's superior interest in nondisclosure during a state construction project dissipates when the project is finished. The Georgia General Assembly recognized this distinction in exempting real estate engineering appraisals for acquiring real property from the Open Records Act until the government acquires the property or terminates the proposed transaction. OCGA § 50-18-72 (a) (6); cf. id. (a) (4) (exempting law enforcement records until litigation involving the investigation and prosecution is final or terminates). Similarly, the exemption for engineering estimates for constructing public projects under OCGA § 24-9-27 ends when the state finishes the construction or abandons the project. Since The Hardaway Company has completed construction of the DOT project, I agree that the state must disclose the engineering estimate under the Open Records Act.

Although the majority opinion cites *Board of Regents v. Atlanta Journal & Const.*, 259 Ga. 214 (378 SE2d 305) (1989), as precluding use of the state matters exception, that case does not apply. The government's interest in nondisclosure of the cost estimate is not a privacy interest. Unlike the candidates for the presidency of Georgia State University, which the Board of Regents hoped to protect by invoking a "corporate preference for privacy," there are no individuals or private matters unrelated to the public business that the DOT seeks to protect in this case. For this reason, I disagree with the majority's rationale in Division 3 and concur specially.

2. Moreover, I disagree that the General Assembly must amend OCGA § 50-18-72 to exempt the engineering cost estimate in this case. See p. 636, supra, n. 4. Engineering estimates relate to the costs of constructing improvements on real estate, whether the state presently owns the property or plans to acquire it. I would hold that engineering estimates for construction projects are exempt under § 50-18-72 (a) (6) until the state completes or terminates the construction project.

I am authorized to state that Justice Hunt joins in this special concurrence.

DECIDED DECEMBER 1, 1992 —
RECONSIDERATION DENIED DECEMBER 17, 1992.

*Lee, Black, Scheer & Hart, Steven E. Scheer, Lewis & McKenna, Sherry L. Wilson,* for appellant.

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General,* for appellees.