S98A1486. SAVANNAH COLLEGE OF ART & DESIGN, INC. v.
SCHOOL OF VISUAL ARTS, INC.
(515 SE2d 370)

HUNSTEIN, Justice.

This appeal concerns public access to court records in a civil case. The superior court ordered that confidential settlement documents filed with Savannah College of Art & Design's (SCAD) discovery motion should be open for public inspection because SCAD failed to meet its burden in limiting access. Because we find the trial court abused its discretion in concluding that SCAD's privacy interest in the settlement documents did not clearly outweigh the public interest in access to court records, we reverse.

In 1993, SCAD sued the School of Visual Arts and nine individuals for conspiracy. In 1996 the schools reached a settlement agreement. One condition of the agreement bound the parties to maintain complete confidentiality about the litigation and the terms of the settlement. The trial court entered an order on February 5, 1996 approving the agreement and expressly ordering the parties to keep all settlement documents confidential. The agreement was not filed with the court, and therefore, there was no request to seal the confidential agreement as a court record.

Four days later, the Visual Arts' president announced to the school's faculty, staff, and students that the school would leave Savannah by June 1999. A news article the following day described the decision to close the school as a term of the agreement settling the lawsuit between SCAD and Visual Arts. Two subsequent articles quote "sources close to Visual Arts" that "Visual Arts agreed to leave town in 1999 and would accept no new students at its Savannah campus as part of its settlement" with SCAD.

In September 1996, Visual Arts filed an arbitration action to enforce the settlement agreement; SCAD filed a counterclaim alleging that Visual Arts had breached the agreement by disclosing its terms to the media.[1] In September 1996, the parties instituted the present civil action for the purpose of enabling discovery in aid of arbitration. Over the next sixteen months, as part of the arbitration proceeding, SCAD deposed various individuals associated with Visual

---

[1] As part of the 1996 settlement agreement, the parties agreed that arbitration would be the sole remedy regarding any dispute arising out of the settlement agreement.

Arts seeking to determine if they were the source mentioned in the newspaper articles. Each person denied being the source "close to SVA" or knowing the source. Both schools then issued subpoenas to the two Savannah Morning News reporters who wrote the articles linking the closing of Visual Arts to the settlement agreement. At the arbitration hearing, SCAD questioned the reporters about their sources. Citing their qualified privilege under the Georgia Shield Law, see OCGA § 24-9-30, the reporters declined to answer. The arbitrator found that SCAD had met the requirements for the statutory exception to the privilege and overruled the newspaper's objection, but both reporters continued to refuse to answer.

SCAD thereafter filed a motion in superior court to compel the reporters to reveal their sources. In the motion, SCAD quoted four paragraphs of its settlement letter with Visual Arts and attached as exhibits the full text of the letter, the mutual release and indemnity agreement, and excerpts from the deposition testimony of Visual Arts' staff and students. In the motion served on the newspaper, however, SCAD redacted any reference to the text of the settlement letter and the deposition testimony and omitted all of the exhibits. On the first page of both copies of the motion, SCAD typed the words "**[FILED UNDER SEAL]**." Because there was no court order limiting access, the documents were maintained by the trial judge's secretary pursuant to an internal operating procedure until there could be a hearing concerning their status. On February 26, 1998, the trial court issued an order directing the clerk to file the motion to compel and confidential settlement documents under seal and to limit access to these documents.

The newspaper filed a Uniform Superior Court Rule 21.5 motion to unseal the documents. Following a hearing, the trial court concluded that SCAD failed to meet its burden as the party seeking to limit access to court records. SCAD filed an interlocutory application under Uniform Superior Court Rule 21.4 and OCGA § 5-6-34 (b), which Visual Arts supported. SCAD then filed this direct appeal and Visual Arts filed an amicus brief supporting reversal of the trial court's order.

Uniform Superior Court Rule 21 provides "[a]ll court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below." Rule 21.2 authorizes superior courts to limit access to court records if the court finds that "the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest." Although the rule creates a presumption that all court records are to be open, it also provides for a limitation on that right when the privacy of a party clearly outweighs the public right to know. In interpreting the provisions of the rule, this Court in *Atlanta Journal &c. v. Long*, 258

Ga. 410, 413 (369 SE2d 755) (1988) reversed the trial court's order sealing certain records where the parties sought to shield public access to virtually all of the pre-judgment records.[2] In *Long* we acknowledged that the aim of the Rule 21 presumption is to ensure that the public will continue to enjoy its traditional right to access to judicial records. We also acknowledged that in cases of clear necessity, identified as instances where privacy rights are in jeopardy, the right of public access should yield.

We find in this case that the presumption in favor of public accessibility to court records is clearly outweighed by SCAD's privacy interest. In contrast to *Long*, the records SCAD sought to protect were minimal and consisted of only twenty-two pages of private settlement documents. SCAD did not otherwise seek to limit public access to the remaining voluminous files in the court records regarding the parties' litigation.[3] Further, these specific documents had previously been acknowledged as confidential by the trial court in a February 1996 order approving the settlement; under the circumstances of this case, this factor was entitled to be accorded great weight under Rule 21.2.

Contrary to the finding of the trial court, we hold the private nature of the settlement agreement was not lost once the document was filed in the trial court. The confidential settlement agreement was attached as an exhibit to the motion to compel as part of an effort to enforce a confidentiality provision. To hold that the private nature of a settlement agreement is lost once the document is filed in the trial court places litigants in the unusual dilemma of having to waive an agreement's confidentiality in order to enforce it. We believe this privacy conundrum is best resolved in favor of a limited access order pursuant to Rule 21.2.

Because of SCAD's strong privacy interest in the confidential documents, we conclude that SCAD met its burden of showing that access by the public to the agreement and related documents should be limited. We accordingly hold that the trial court abused its discretion in refusing to enter such an order.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., Sears and Hines, JJ., who dissent.*

FLETCHER, Presiding Justice, dissenting.

The trial court did not abuse its discretion in refusing to allow a

---

[2] These documents included the complaint, answers, pre-trial order, discovery and motions for adjudication on the merits and briefs.

[3] The trial court noted in its March 9, 1998 order that the earlier litigation was the largest lawsuit litigated in the circuit and that the pleadings, motions and discovery filed with the clerk of court filled over 130 large cartons, all of which remained available to the public.

private agreement to keep a settlement confidential override the traditional right of public access to judicial records. Even if the private interest in a confidential agreement were equal to the public's right of access, SCAD's privacy interest in this case should not trump the public's right to court records since SCAD failed to follow the proper procedure for limiting access to its confidential agreement. Because the majority opinion allows an undefined privacy interest to overcome the presumption that court records should be open to the public, I dissent.

In this state, "the public and the press have traditionally enjoyed a right of access to court records."[4] Public access protects litigants and citizens "because justice faces its gravest threat when courts dispense it secretly."[5] In addition, access to court records in civil litigation strengthens the soundness of the trial judge's decisions, encourages greater integrity from attorneys and their clients, and promotes public health and safety.[6]

This common-law right of public access is preserved in the Uniform Superior Court Rules.[7] Rule 21 states: "All court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below."[8] Rule 21.2 gives superior courts authority in exceptional cases to limit access based on a party's motion, if the trial court finds that "the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest."[9] The court's order must state "the part of the file to which access is limited, the nature and duration of the limitation, and the reason for limitation."[10] The party seeking to seal court records has the burden of overcoming the presumption of public access with specific reasons.[11]

---

[4] *Atlanta Journal & Atlanta Const. v. Long*, 258 Ga. 410, 411 (369 SE2d 755) (1988); see *Nixon v. Warner Communications*, 435 U. S. 589, 597-599 (98 SC 1306, 55 LE2d 570) (1978) (discussing the right to inspect and copy judicial records); OCGA § 50-18-70 (1998) (public records shall be open for public inspection).

[5] *Long I*, 258 Ga. at 411.

[6] See Lloyd Doggett & Michael J. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest*, 69 Tex. L. Rev. 643, 648-653 (1991); see also *Hammock v. Hoffmann-LaRoche*, 662 A2d 546, 558 (NJ 1995) (adopting a broad standing rule affording public access to court files in products liability action against drug manufacturer because issues of public health, safety, and consumer fraud involved).

[7] See *Long I*, 258 Ga. at 411; see also *Green v. Drinnon, Inc.*, 262 Ga. 264, 265 (417 SE2d 11) (1992) (holding that tape or transcript of a judge's remarks in open court must be made available for public inspection based on Uniform State Court Rule 21); Unif. Prob. Ct. R. 17 (adopting same balancing test before limiting access to court records in probate cases).

[8] See, e.g., OCGA § 15-11-58 (1994) (with certain exceptions, court order required before files and records in a juvenile proceeding are open to inspection).

[9] Unif. Sup. Ct. R. 21.2.

[10] Unif. Sup. Ct. R. 21.1.

[11] *Long I*, 258 Ga. at 414; cf. *Brown v. Minter*, 243 Ga. 397, 398 (254 SE2d 326) (1979) (burden is on public agency to explain why identifiable public records should not be fur-

In *Atlanta Journal v. Long*,[12] we evaluated whether the superior court had correctly applied Rule 21 in denying public access to pre-judgment court records. In that case, the superior court had prohibited access based on the parties' privacy interest in avoiding embarrassment, the governmental interest in preserving the courts as the forum for resolving disputes, and the possibility that the pre-judgment documents could be misused. Reviewing the trial court's application of the balancing test, we held that the parties had not met their burden of overcoming the presumption that the public has a right of access.[13] It is not clear from that decision the role of the trial court in weighing the competing interests. Today's decision does little to clarify this issue.

Under Rule 21, the trial court is required to weigh the public's interest in court records against the litigants' interest in privacy. This balancing of competing interests requires the exercise of judicial discretion.[14] I agree with the majority opinion that the trial court's decision granting or limiting access under Rule 21 is reviewed for abuse of discretion.[15] On appeal, however, we do not accord the same deference generally given a trial court's discretionary decisions that are based on first-hand observations, such as the credibility of witnesses.[16] Instead, we review whether the trial court considered the relevant interests and gave them the appropriate weight in exercising its discretion and granting or limiting access to the court records.[17]

In this case, the trial court listed SCAD's reasons for limiting access as its wish to keep the settlement agreement confidential and the fact that confidentiality was a key to reaching the settlement in 1996. In comparison, the trial court listed the newspaper's reasons for granting access as the presumption that court records should be open, the Savannah arts community's interest in the terms of the settlement, and the changing circumstances since the agreement was

---

nished citizen requesting them).

[12] 258 Ga. 410.

[13] Id. at 414-415.

[14] See *Nixon*, 435 U. S. at 599 (cases recognizing the common-law right of access agree the decision is one best left to the sound discretion of the trial court to be exercised in light of the relevant facts and circumstances of the particular case); cf. *Bowers v. Shelton*, 265 Ga. 247, 249 (453 SE2d 741) (1995) (under Open Records Act, superior courts vested with discretion in deciding whether to allow or prohibit inspection of public records).

[15] Cf. *General Tire v. Kepple*, 970 SW2d 520, 526 (Tex. 1998) (adopting abuse of discretion standard of review under state rule).

[16] See *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 800 F2d 339, 344 (3d Cir. 1986).

[17] See *United States v. Criden*, 648 F2d 814, 817-819 (3d Cir. 1981) (discussing the different types of appellate review of trial court's discretionary decisions); cf. *State ex rel. Bilder v. Township of Delavan*, 334 NW2d 252, 261 (Wis. 1983) (on review appellate court must decide as a matter of law whether reasons for closure are sufficient).

made in 1996. It is not clear what weight the trial court gave to the competing interests, except that the evidence did not tilt the balance "clearly" towards privacy, as required by Rule 21.

Although parties in civil litigation may have an interest in keeping confidential a settlement agreement, SCAD has failed to articulate any specific harm that it would suffer from disclosure of its agreement with Visual Arts.[18] First, both SCAD and Visual Arts are corporate entities and therefore cannot identify any personal privacy interest protected under state law.[19] Second, the settlement does not involve any issue that courts generally recognize as exceptions to the common-law right, such as a trade secret, defamatory material, or national security.[20] Third, both schools' interest in confidentiality has diminished over the past three years as they have implemented the substantive provisions of their agreement.[21] In particular, the need for the agreement to remain confidential became less compelling after Visual Arts closed its Savannah campus.

Any privacy interest in the settlement dwindled further when SCAD invoked, with Visual Arts' support, the power of the superior court to aid in enforcing their agreement.[22] Although the schools could have filed a voluntary dismissal of their action after settling in 1996, they instead obtained a court order approving the agreement and ordering both parties to comply with its terms and conditions. Among the terms was a requirement that they resolve any further dispute by private arbitration. In spite of this provision, SCAD filed its motion to compel seeking the court's assistance to obtain evidence showing that Visual Arts breached their agreement by disclosing

---

[18] See *Hammock*, 662 A2d at 559 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient.").

[19] See *Board of Regents v. Atlanta Journal & Atlanta Const.*, 259 Ga. 214, 217 (378 SE2d 305) (1989) (distinguishing between a personal right to privacy and a corporate preference for privacy); cf. *Harris v. Cox Enters.*, 256 Ga. 299, 301 (348 SE2d 448) (1986) (personal privacy exception to right of public access under Open Records Act determined by examining tort of invasion of privacy). See generally RESTATEMENT (SECOND) OF TORTS § 652I cmt. c (1977) (a corporation has no right to privacy under tort law aside from the exclusive use of its own name).

[20] See *Nixon*, 435 U. S. at 598; *Mokhiber v. Davis*, 537 A2d 1100, 1115 (D.C. 1988).

[21] See *Hardaway Co. v. Rives*, 262 Ga. 631, 635 (422 SE2d 854) (1992) (noting that the public interest in exempting DOT's cost estimates from disclosure outweighs the public interest in disclosure until construction projects are completed or abandoned); *Houston v. Rutledge*, 237 Ga. 764, 765-766 (229 SE2d 624) (1976) (distinguishing between public records in a current criminal investigation, which should not be open for public inspection, and public records maintained in a concluded criminal investigation, which should be available); see also *Napper v. Georgia Television Co.*, 257 Ga. 156, 165 (356 SE2d 640) (1987) (investigatory file in criminal case should be made available for public inspection once the trial has been held, conviction affirmed, and petitions for certiorari denied).

[22] See *Mokhiber*, 537 A2d at 1111 ("By submitting pleadings and motions to the court for decision, one enters the public arena of courtroom proceedings and exposes oneself, as well as the opposing party, to the risk, though by no means certainty, of public scrutiny.").

"confidential" information — the linking of the school's closing to the lawsuit settlement — that any astute observer of the litigation could have deduced independently.

Finally, there is no "privacy conundrum" in this case. On the contrary, it was SCAD's own actions in directly quoting the settlement letter and attaching it as an exhibit, when neither action was necessary to resolve the discovery motion, that instigated this appeal. SCAD had several ways to protect its settlement documents from public scrutiny besides marking them "filed under seal." It could have followed the procedures set out in Rule 21, which directs parties to seek a court order limiting access; it could have filed with the court clerk the same redacted copy of its legal memorandum that it served on the newspaper; it could have filed a brief describing the settlement agreement as confidential without quoting its specific provisions, as shown by its replacement brief; or it could have limited the number of documents and length of time they would be under seal rather than seeking blanket non-disclosure. Instead, SCAD relied on a form of self-help for which there is no basis in the law of this state.

On appeal, SCAD and Visual Arts additionally argue that the public interest in promoting the settlement of lawsuits justifies filing the settlement agreement under seal. Although there is a strong public policy in favor of encouraging settlements in civil cases, the litigants must show more than a general interest in promoting settlements.[23] In *Long I*, we rejected the argument that the public interest in promoting private settlements before trial justifies limiting public access to pre-judgment court records.[24] Moreover, this particular appeal does not support SCAD's contention that the public has an interest in encouraging confidential settlements to save judicial resources. It is the fact that the schools made their agreement "confidential" that they had a basis for claiming in court that the other side breached their agreement.

Competing against the schools' interest in confidentiality is the public's traditional right of access to court records. The primary purpose of this right is to evaluate the court's exercise of its authority to ensure that the judicial system operates fairly. Although the schools describe their dispute as one between private parties, both SCAD and Visual Arts have invited public support and scrutiny through their recruitment, marketing, and programs.[25] The resolution of their

---

[23] See generally Anne-Therese Bechamps, *Sealed Out-Of-Court Settlements: When Does the Public Have a Right to Know?*, 66 NOTRE DAME L. REV. 117, 128-130 (1990) (discussing policy of encouraging settlement of disputes without litigation).

[24] *Long I*, 258 Ga. at 415.

[25] See, e.g., Jacqueline Buena, *Savannah Art Colleges Square Off In Ugly Feud*, WALL ST. J., Jan. 24, 1996, at S-1 (aggressive marketing made SCAD largest arts school in the country by 1992); see also Tom Barry, *Hutchinson Island Project creating second 'exciting'*

litigation, the largest civil lawsuit in the county's history, and the reasons for Visual Arts' departure from downtown Savannah are issues of public interest to the schools' students and the city's citizens and taxpayers.

Having reviewed these competing interests, I conclude that the trial court did not abuse its discretion in ruling that the harm to the privacy of SCAD and Visual Arts from disclosure did not outweigh the public interest in access to court records under Rule 21. As a result, I would affirm the order granting the newspaper's motion to unseal the record.

I am authorized to state that Justice Sears and Justice Hines join in this dissent.

DECIDED MARCH 8, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*Jones, Day, Reavis & Pogue, David J. Bailey, Gregory R. Hanthorn,* for appellant.

*Savage, Herndon & Turner, Robert B. Turner, Robert S. Kraeuter, Hull, Towill, Norman & Barrett, James B. Ellington, Nancy S. Gentry,* for appellee.

*Dow, Lohnes & Albertson, Peter C. Canfield, Sean R. Smith, Thomas M. Clyde,* amicus curiae.