**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 13, 2025**

# In the Court of Appeals of Georgia

A24A1357. APPEN MEDIA GROUP, INC. v. CITY OF SANDY
SPRINGS.

RICKMAN, Presiding Judge.

This case involves the disclosure of law enforcement incident reports and report narratives under Georgia's Open Records Act ("the Act"). Following the grant of summary judgment to the City of Sandy Springs, Appen Media appeals contending that the trial court erred by granting summary judgment and concluding that the records at issue did not have be disclosed in response to a request pursuant to the Act.

"We review the legal issues raised in a grant or denial of a motion for summary judgment de novo. However, when factual issues are presented on cross-motions for summary judgment, as they are here, we view the evidence in the light most favorable

to the nonmovants." *Omstead v. BPG Inspection*, 319 Ga. 512, 513 (1) (903 SE2d 7) (2024) (citations and punctuation omitted).

So viewed, the evidence — which includes the facts alleged in the parties' verified pleadings that are within their personal knowledge, see *Zhong v. PNC Bank*, 345 Ga. App. 135, 145 (3) (b) (i) n. 3 (812 SE2d 514) (2018) — shows that Appen Media publishes a local newspaper, the "Sandy Springs Crier." In response to the newspaper's open records requests for specific police incident reports in cases still under investigation, the City disclosed documents titled "Incident/Investigation Report." Those documents were prepared by the police officers who responded to the incidents and contained information such as the location of the incident, the date and time reported, the types of crimes allegedly committed, the alleged victim and other persons involved, the suspect's name and address, and the vehicle or other property involved.

The "Incident/Investigation Reports" produced by the City also included a space for the responding officers to provide a narrative. The reports attached to Appen Media's complaint as examples of what the City provided to the newspaper all contained short, one- or two-sentence narratives. For example, one such incident

report stated that on a specific date the officer observed a black SUV driving at a high rate of speed on a certain street.

But the officers responding to an incident sometimes wrote more detailed narratives about those initial responses, which they put in a separate document titled "Investigating Officer Narrative." Some of those more detailed narratives began with the same short, one- or two-sentence narratives found in the "Incident/Investigation Report."

The narrative reports contained more detailed information about the criminal investigations. For one specific Theft by Shoplifting investigation, the incident report stated that an officer responded to a certain Home Depot store in reference to a shoplifting. The narrative report was much more detailed including: witness notes about the incident; the items that were stolen; the value of the stolen merchandise; that the store had video footage of the incident; a previous case number where the same suspect previously committed a shoplifting at the same store; that a still photo from the prior shoplifting of the suspect matched the video footage of the shoplifting at issue; and that the officer applied for and received a warrant for the suspect.

The City did not disclose the narrative reports in response to Appen Media's Open Records Act requests. Instead, the City took the position that the narrative reports were "supplemental reports" that were exempt from disclosure under the Act. Ultimately, Appen Media brought this action against the City to compel the City's compliance with the Act, and it also sought attorney fees and costs of litigation.

The parties filed cross-motions for summary judgment. Among other things, they argued about whether the narrative reports at the heart of this dispute were "initial incident reports" that must be disclosed under the Act. See OCGA § 50-18-72 (a) (4). Although the trial court stated that Appen Media "may be correct in its assertion that [the City's] practice [of putting the responding officer's more detailed narratives in a separate document] violates the spirit of the Open Records Act[,]" the trial court concluded that the narratives were not part of an initial incident report and so did not have to be disclosed in response to an open records request. For this reason, the trial court granted summary judgment to the City and denied Appen Media's cross-motion for summary judgment.

Appen Media asserts four enumerations of error that all challenge the trial court's summary judgment ruling. It argues, essentially, that the Act requires the

disclosure of all narrative reports setting out what occurred in a law enforcement officer's initial response to an incident; that there is evidence suggesting the existence of more detailed narratives for the incidents in question; and that the City violated the Act by failing to disclose those narrative reports. The City does not deny that the narrative reports are public records under the Act. Instead, it argues, and the trial court found, that they are protected from disclosure under the statutory exemption for "[r]ecords of law enforcement . . . in any pending investigation or prosecution of criminal or unlawful activity, *other than initial police arrest reports and initial incident reports*[.]" OCGA § 50-18-72 (a) (4) (emphasis supplied).

The Act provides that "[a]ll public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure." OCGA § 50-18-71 (a). The exemption at issue, OCGA § 50-18-72 (a) (4), broadly protects from public disclosure "[r]ecords of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, *other than* initial police arrest reports and initial incident reports." (emphasis added). "That subsection broadly exempts from disclosure the entirety of [law enforcement and prosecution] records to the

5

extent they are part of a pending investigation or prosecution and cannot otherwise be characterized as the initial arrest or incident report." *Unified Govt. of Athens-Clarke County v. Athens Newspapers*, 284 Ga. 192, 195 (1) (663 SE2d 248) (2008) (citation and punctuation omitted). "Although exemptions from disclosure under the [Act] are narrowly construed, the Act obviously should not be construed in derogation of its express terms." (Citation and punctuation omitted) Id.

Although the Act requires disclosure of "initial incident reports," it does not define that term. To construe it, we look to familiar principles of statutory interpretation. See *Cardinale v. Keane*, 362 Ga. App. 644, 646 (1) (869 SE2d 613) (2022); *The Augusta Press v. Roundtree*, 368 Ga. App. 64, 65-66 (1) (888 SE2d 267) (2023). "[W]e must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). "And when we are confronted with a statute having several parts, we must endeavor to harmonize those parts so as to give

a sensible and intelligent effect to each part." (Citation and punctuation omitted.) *Thornton v. State*, 310 Ga. 460, 463 (2) (851 SE2d 564) (2020).

"Incident reports" are standard forms used by criminal justice agencies. These form reports are used by law enforcement agencies to gather data as required by the uniform crime reporting process. See OCGA § 35-3-36 (i). Law enforcement agencies even periodically must "provide for audit samples of incident reports" in order to ensure "agency compliance with national and state uniform crime reporting requirements." OCGA § 35-3-6 (k).

Because the statute does not define the term "initial," that task falls to us. "Initial" is defined in the current version of Merriam-Webster's dictionary as "of or relating to the beginning: incipient" and "placed at the beginning: first." Instructively, an initial appearance is defined as "[a] criminal defendant's *first* appearance in court[.]" *Blacks's Law Dictionary* (12th Ed. 2024) (emphasis supplied). In the social security context, an initial determination is "[t]he *first* determination made by the Social Security Administration of a person's eligibility for benefits." *Black's Law Dictionary* (12th Ed. 2024) (emphasis supplied). See generally *United Govt. of Athens-Clarke County v. Athens Newspapers*, 284 Ga. 192, 195 (1) (663 SE2d

248) (2008) (defining the plain and ordinary meaning of "pending" under OCGA § 50-18-72 (a) (4)). With these principles in mind, the most natural and reasonable meaning of "initial incident report" is the first incident report completed by a law enforcement officer on a standard incident report form when beginning a criminal investigation.

We note that former OCGA § 50-18-72 (1998) limited public exposure to law enforcement records "other than initial police arrest reports, accident reports and incident reports." The 1999 amendment added the word "initial" as a qualifier to "incident report," which clearly constitutes a limitation, not an expansion, on the type of incident reports subject to disclosure.

Here, it was the City's burden to show why the requested records should not be disclosed as a matter of law. See *Napper v. Ga. Television Co.*, 257 Ga. 156, 161 (e) (356 SE2d 640) (1987). The City fails to meet its burden. Whether a narrative report prepared at the same time as an incident report actually constitutes part of that initial incident report is a fact specific inquiry. In some cases it may, and in some cases it may not. But we cannot say *as a matter of law* that a narrative report is not a part of the initial incident report subject to disclosure under OCGA § 50-18-72 (a), based upon

8

the record before us, which was simply not fully developed as to that issue.[1] Thus, the trial court's grant of summary judgment was premature. Genuine issues of material fact remain based on this record and thus the trial court erred by granting summary judgment to the City. See generally *Smith v. Tibbits*, 359 Ga. App. 362, 372 (3) (857 SE2d 820) (2021) (reversing the grant of summary judgment where there were genuine issues of material fact remaining).[23]

*Judgment affirmed in part; reversed in part. Mercier, C. J., concurs and McFadden, P. J., concurs specially.*

---

[1] This is an issue of great significance for Georgia citizens and Georgia law enforcement agencies. In the absence of a statutory definition, we have provided one. The General Assembly, however, has the option of providing a more detailed definition after public discourse and debate.

[2] To the extent that Appen Media asserts that we should also reverse the denial of its motion for summary judgment, as explained throughout this opinion, genuine issues of material fact exist as to whether the City violated the Act in its response to Appen Media's requests and thus the trial court properly denied summary judgment.

[3] We have circulated this decision among all nondisqualified judges of the Court to consider whether this case should be passed upon by all members of the Court. Fewer than the required numbers of judges, however, voted in favor of considering the case en banc.

# In the Court of Appeals of Georgia

A24A1357. APPEN MEDIA GROUP, INC. v. CITY OF SANDY
   SPRINGS.

MCFADDEN, Presiding Judge, concurring specially.

Georgia's Open Records Act begins with the General Assembly's finding and declaration "that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government. . . ." OCGA § 50-18-70 (a). The Act then "finds and declares that there

is a strong presumption that public records should be made available for public inspection without delay." Id. It concludes its opening paragraph by directing that it "shall be broadly construed to allow the inspection of governmental records" and that exceptions to its disclosure requirements "shall be interpreted narrowly. . . ." Id.

Today's opinion ignores those findings and declarations and violates those directions. Today's opinion construes the provision before us to render its disclosure requirement substantively meaningless.

I respectfully disagree. It has not been, and should not become, the practice of the Georgia appellate courts to confuse our duty and authority to say what the law is with a right to substitute our policy preferences for the policy choices of the legislature.

I agree, however, that neither party is entitled to summary judgment at this stage. Whether the City of Sandy Springs violated the Open Records Act in its response to Appen Media Group, Inc.'s specific open records requests will turn on issues of fact. So I concur specially.

The provision before us is OCGA § 50-18-72 (a) (4), which requires disclosure of "initial incident reports." As the majority notes, law enforcement agencies use a

standard form for incident reports. That form contains a space for the responding officer's narrative. The City has adopted a practice of providing only a short, one- or-two sentence narrative in that space in the first incident report filed and including in it very little other information. Instead, the City includes the full narrative in a subsequent report which is filed thereafter — at least sometimes immediately thereafter. Those subsequent reports, the City contends and the majority agrees, are not "initial incident reports" and so not subject to the Open Records Act. I would hold that this practice is an improper circumvention of the Act and that the responding officer's full narrative about his or her initial response to the incident also constitutes an "initial incident report" subject to disclosure under the Act.

1. *The Open Records Act should be construed to require the disclosure of the more detailed narratives to the extent they concern law enforcement's initial response to an incident*

The Open Records Act begins with the legislative findings and declarations noted above. The Act then directs that

> "[a]ll public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure." OCGA § 50-18-71 (a).

12

Government agencies therefore have a duty to disclose public records unless relieved of that duty by a specific exemption or court order.

*Blau v. Ga. Dept. of Corrections*, 364 Ga. App. 1, 5 (1) (873 SE2d 464) (2022) (citation and punctuation omitted). The Act gives a trial court the power "to enforce compliance with [its] provisions. . . ." OCGA § 50-18-73 (a). It "expressly creates a private right of action to enforce the obligations imposed on persons or agencies having custody of records open to the public under the Act." *Blau*, supra (citation and punctuation omitted).

I agree with Appen Media that the City was obligated under the Act to disclose the more detailed narratives associated with the "Incident/Investigation Reports" (or "short reports") that Appen Media received in response to its requests. The City does not contest that the more detailed narratives are public records. And contrary to the majority's position, to the extent the more detailed narratives concern law enforcement officers' initial response to an incident, they are not protected from disclosure under the statutory exemption for "[r]ecords of law enforcement . . . in any pending investigation or prosecution of criminal or unlawful activity, *other than initial police arrest reports and initial incident reports*[.]" OCGA § 50-18-72 (a) (4) (emphasis

supplied). That exemption only applies to law enforcement and prosecution records "to the extent they are part of a pending investigation or prosecution and cannot otherwise be characterized as the initial arrest or incident report." *Unified Govt. of Athens-Clarke County v. Athens Newspapers*, 284 Ga. 192, 195 (1) (663 SE2d 248) (2008) (citation and punctuation omitted).

Our duty in construing the term "initial incident reports" in OCGA § 50-18-72 (a) (4), as in any case of statutory construction, is to administer the policy choices made by the political branches and set out in the text of the statute. We are to "keep[] in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). We are to administer the remedies selected by the General Assembly, not to expand or narrow those remedies to suit our own policy preferences.

We must keep in mind "that the legislature has directed that the Open Records Act be 'broadly construed to allow the inspection of government[al] records,' OCGA § 50-18-70 (a)," *Blau*, 364 Ga. App. at 5 (1) (citation and punctuation omitted), and that the exceptions to disclosure "shall be interpreted narrowly so as to exclude from disclosure only that portion of a public record to which an exclusion is directly applicable." OCGA § 50-18-72 (b). The majority does the opposite.

The provision at issue in this case distinguishes "initial police arrest reports and initial incident reports" from other records "in any pending investigation or prosecution of criminal or unlawful activity." OCGA § 50-18-72 (a) (4). The 52 exceptions set out in the enumerated subsections of OCGA § 50-18-72 (a) all reflect legislative policy choices, drawing lines between what should and should not be disclosed. Together with OCGA §50-18-72 (a) (3), which is discussed below, the exception before us draws a line between the right of the public to know what law enforcement agencies are doing and those agencies' need for confidentiality in their ongoing investigations and prosecutions. That line reflects a legislative determination of when the public's right to know outweighs the agencies' need for confidentiality. The General Assembly has determined that the balance normally tips in favor of transparency when it comes to arresting or initial investigating officers' reports of what they saw and heard and that law enforcement agencies are unlikely to need to keep such information confidential, for example, "on the ground that if access to materials is limited to police personnel, statements of witnesses and suspects and other evidence can be checked against information known only to investigators." *Unified Govt. of Athens-Clarke County*, 284 Ga. at 197 (1).

The majority's analysis focuses narrowly on the meaning of the words in the phrase "initial incident reports." The Act does not define that phrase, nor does it define "initial," "incident," or "incident report."

As the majority notes, however, there is legislation indicating that incident reports are required to be substantive. They are to comply "with national and state uniform crime reporting requirements." OCGA § 35-3-36 (k). The majority relies on "initial" to remove that requirement.

The majority says that is it our task to "define the term 'initial.'" But "initial" is a common word, lacking disparate meanings and used here in its ordinary sense.

"[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945) (L. Hand, J.), aff'd, *Markham v. Cabell*, 326 U. S. 404 (66 SCt 193, 90 LEd 165) (1945).

The question posed by this case is not what "initial" means, but what that adjective modifies. That is, does the statute require only that agencies disclose the first

document created, regardless of content or lack of content? Or does "initial" modify the substance of the information to be disclosed? The former, which the majority advocates, would render meaningless the requirement that these initial reports be disclosed.

As the majority notes, the dictionary definition of the word "initial" is "first." But to construe the phrase "initial incident reports" to limit disclosure to only the first of any reports documenting law enforcement's initial response to an incident would permit a law enforcement agency to avoid disclosing information about that initial encounter — information that could and should "be characterized as the initial . . . incident report[,]" *Unified Govt. of Athens-Clarke County*, 284 Ga. 195 (1) (citation and punctuation omitted) — simply by putting the information in a later report.

Under the majority's construction, the provision before us would be effectively meaningless. The only information required would be that an incident or arrest occurred — nothing else. No disclosure would be required about who was involved, about what happened, or about where and when the incident occurred. That construction would overrule the compromise the General Assembly reached on this question. It also would thwart the reporting policies established in OCGA § 35-3-36.

17

And by confining the text "initial incident reports" to mean only the report filed first in time, the majority ignores our General Assembly's purposeful use of the plural "reports" in the phrase "initial incident reports." Before 1999, in the clause identifying the materials that law enforcement agencies are *not* excused from disclosing, the word "initial" modified the phrase "police arrest reports, accident reports, and incident reports[,]" former OCGA § 50-18-72 (a) (4) (1998); but the General Assembly amended the statute in 1999 to repeat the word "initial" so as to specifically modify the plural phrase "incident reports." OCGA § 50-18-72 (a) (4); see Ga. L. 1988, p. 247, § 3; Ga. L. 1999, p. 811, § 4. In doing so, the General Assembly continued to use the plural form of the word, although the singular would have been more in line with the interpretation that the majority advocates. We must attach meaning to the decision by the legislature to change the statute to include the particular phrase "initial incident reports," see *Transp. Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999), and in construing that phrase we are required to give meaning to both the word "initial" and the plural word "reports." See *Scott v. State*, 299 Ga. 568, 574 (2) (788 SE2d 468) (2016).

18

Perhaps the majority's contrary reading of the statute's use of plural nouns and of "initial" is plausible. But, contrary to the majority's argument — in the sentence containing its sole and passing reference to the findings and declarations with which the Act begins — its reading is not mandated by the "express terms" of the Act. It is founded on inferences. It cannot be reconciled to those findings and declarations. It contravenes their directions that the Act be construed broadly and its exceptions narrowly. See OCGA § 50-18-70 (a).

For these reasons, I would construe the term "initial incident reports" to mean reports documenting a law enforcement officer's initial response to an incident. I would hold that, regardless of the title or description given to the document in which it is recorded, the responding officer's narrative about his or her initial response to an incident constitutes an "initial incident report" under the Act. This is a natural and reasonable reading of the statute and, in my view, the only tenable construction of OCGA § 50-18-72 (a), meaning that the "search for statutory meaning is at an end." *Deal*, 294 Ga. 173 (1) (a).

Although we are not judges of the wisdom of the legislature's policy choices, I note that construing the Act's provision for disclosure of initial incident reports to

require substantive reports would not be disruptive to law enforcement agencies. The provision before us must be read in conjunction with the immediately preceding subsection. OCGA § 50-18-72 (a) (3) provides,

Public disclosure shall not be required for records that are:

(3) Except as otherwise provided by law, records compiled for law enforcement or prosecution purposes to the extent that production of such records is reasonably likely to disclose the identity of a confidential source, disclose confidential investigative or prosecution material which would endanger the life or physical safety of any person or persons, or disclose the existence of a confidential surveillance or investigation[.]

"[I]ncident reports are exempted from disclosure to the extent that they contain the type of confidential information specified in subsection (a) (3) of OCGA § 50-18-72." *Atlanta Journal & Constitution*, 265 Ga. at 414-415 (1). Subsection 3 material is not subject to disclosure, even if it is in an initial public report.

Moreover the record before us record contains "A Law Enforcement Officer's Guide to Open Records in Georgia." That document was approved by the Georgia Association of Chiefs of Police, the Georgia Bureau of Investigation, the Georgia Sheriff's Association, the Georgia Department of Law, and the Georgia Department of Public Safety — together with the Georgia First Amendment Foundation and the

Georgia Press Association. It rejects the position advocated by the City and adopted by the majority:

> Initial incident and police reports are subject to the [Open Records] Act's disclosure requirements, regardless of whether they are part of an active investigation. Additionally, any report, whether entitled a "supplemental report," "narrative report," or similar document name that is produced as part of an initial incident report or can be characterized as such, is likewise to be disclosed.

And construing the statute to impose a meaningful disclosure requirement does not require law enforcement officers to create reports they otherwise would not have, as the City suggests. It merely requires the City to disclose existing reports documenting officers' initial response to an incident, whenever created and however labeled.

The City suggests that construing the statute in this way would require it to disclose more information than the Act requires, because law enforcement officers have a practice of amending their narratives to include information about the investigation beyond what was obtained in their initial response. But the Act does not provide for a blanket exclusion from disclosure simply because some information in a document might be subject to exclusion. Such information can be redacted. As our

Supreme Court has explained, OCGA § 50-18-72 "directs a narrow construction of its exclusions, exempting [from disclosure] only that portion of a public record to which an exclusion is directly applicable." *Hardaway Co. v. Rives*, 262 Ga. 631, 634 (2) (a) (422 SE2d 854) (1992) (citation, punctuation, and emphasis omitted). "[T]he entirety of an initial . . . incident report would not be exempted from disclosure under subsection (a) (4) [of OCGA § 50-18-72], even if that report is part of a 'pending investigation or prosecution.'" *Atlanta Journal & Constitution v. City of Brunswick*, 265 Ga. 413, 414 (1) (457 SE2d 176) (1995).

The City bears the burden of explaining why requested records should not be disclosed, see *Napper v. Ga. Television Co.*, 257 Ga. 156, 161 (356 SE2d 640) (1987), and it may raise any issues of confidentiality under OCGA § 50-18-72 (a) (3) in an ex parte hearing. *Atlanta Journal & Constitution*, 265 Ga. at 415 (2). The possibility that the more detailed narratives associated with Appen Media's requests might also contain information that is exempt from disclosure merely highlights the existence of questions of fact as to whether the City disclosed what it was required to in response to Appen Media's requests.

*2. The evidence suggests that more detailed narratives may exist for the incidents that were the subjects of Appen Media's requests and, therefore, the City may have violated the Open Records Act by failing to disclose them*

The evidence, viewed most favorably to Appen Media, shows that Appen Media requested incident reports but received only the short reports and not any more detailed narratives. And there is evidence, by way of examples from closed cases, of instances when responding officers included one- or two-sentence narratives about an incident in a short report and the rest of that narrative in a more detailed narrative report.

For example, the narrative in the "Incident/Investigation Report" for one such case states: "On 11/28/22, I responded to [a specific address] (Home Depot, Inc.) in reference to Theft by Shoplifting." But the "Investigative Officer Narrative" for the same case states:

> On 11/28/22, I responded to [a specific address] (Home Depot, Inc.) in reference to Theft by Shoplifting call. On arrival, I met with Loss Prevention Specialist Supervisor Roy Fleetwood. Fleetwood stated that on 11/25/22 that [the suspect] entered the store at 4:04 pm, loaded several Milwaukee power tools into a buggy, and passed all points of sale at 4:08 pm without paying for said items. Fleetwood stated the items

23

were valued at $1853.00. Fleetwood stated [the suspect] then loaded items into a white in color passenger car and backed out of the parking lot to conceal the tag on the vehicle.

Fleetwood provided [a specified] previous case # . . . where [the suspect] loaded a buggy and went through the front doors and was confronted by store employees on 7/16/2021 for Theft by Shoplifting. Fleetwood stated [the suspect] was brought to his office until SSPD arrived on scene and effected the arrest on [the suspect]. Fleetwood provided a still shot of [the suspect] on the 7/16/21 arrest. The still shot of [the suspect] back on 07/16/21 and the video footage provided today matched the GA DL return of [the suspect].

Fleetwood couldn't provide serial numbers for the items taken. Fleetwood stated he was informed by the Austell Home Depot location that [the suspect] had left the Sandy Springs on 11/25/22 and had committed the same offense there a couple of hours later. Fleetwood provided [a specified] Cobb County case #. . . .

I applied for a Theft by Shoplifting warrant through the Fulton County Magistrate Court and was granted [a specified] warrant #. . . . The warrant was placed on GCIC by [a specified] operator. . . . The still photos obtained today from Fleetwood were uploaded to AXON.

Nothing further.

A factfinder could infer from the closed-case examples that similar, more detailed narratives exist for the incidents that are the subjects of Appen Media's open records requests, but the City did not disclose them. See *Patterson v. Kevon, LLC*, 304 Ga. 232, 236 (818 SE2d 575) (2018) ("circumstantial evidence constitutes proof of other facts consistent with the hypothesis claimed" and "may be sufficient for a plaintiff's claim to survive summary judgment, if other theories are shown to be less probable") (citations, punctuation, and emphasis omitted).

3. *Neither party is entitled to summary judgment at this stage*

Because questions of fact exist as to whether the City produced all initial incident reports requested by Appen Media, neither the City nor Appen Media is entitled to summary judgment. For this reason, I concur in the majority's ultimate conclusion that we must reverse the grant of summary judgment to the City and affirm the denial of summary judgment to Appen Media.