**WHOLE COURT**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. http://www.gaappeals.us/rules**

**October 23, 2018**

# In the Court of Appeals of Georgia

A15A2303, A15A2304. SMITH v. NORTHSIDE HOSPITAL, INC., et al.; and vice versa.

DILLARD, Chief Judge.

In *Smith v. Northside Hospital, Inc.*, 302 Ga. 517 (807 SE2d 909) (2017) ("*Smith II*"), the Supreme Court of Georgia reversed our previous decision in *Smith v. Northside Hospital, Inc.*, 336 Ga. App. 843 (783 SE2d 480) (2016) ("*Smith I*") and remanded the case with direction. Specifically, our Supreme Court reversed this Court's holding affirming the trial court's dismissal of E. Kendrick Smith's action to compel Northside Hospital, Inc. and its parent company, Northside Health Services, Inc. (collectively, "Northside") to provide him with access to certain documents in response to his request under the Georgia Open Records Act (the "Act").[1] In doing

---

[1] *See* OCGA § 31-7-70 *et seq.*

so, the Supreme Court concluded that the trial court applied the wrong legal standard to the undisputed facts in finding the documents at issue were not public records within the meaning of the Act, and it remanded the case for the trial court to apply the correct legal standard, as set forth in *Smith II*, in determining whether the documents were public within the meaning of the Act; and if so, whether they may nevertheless be withheld under a statutory exception. Accordingly, we adopt the judgment of our Supreme Court, reverse the trial court's dismissal of Smith's action, and remand the case for further proceedings consistent with *Smith II.* But before doing so, we still have one other issue to address.

*Smith I* involved cross-appeals, Case Nos. A15A2303 (*i.e.*, Smith's primary appeal) and A15A2304 (*i.e.*, Northside's cross-appeal), and the Supreme Court of Georgia, in *Smith II*, only addressed our decision in the primary appeal. In *Smith I*, we originally agreed with the trial court's conclusion that the documents at issue were not public documents as a matter of law, and thus, we dismissed Northside's cross-appeal, which challenged a pre-trial discovery ruling as moot. But given our Supreme

2

Court's reversal of *Smith I*, Northside's cross-appeal is no longer moot, and we will now address it.[2]

Specifically, Northside argues that the trial court abused its discretion by entering a protective order, prohibiting it from seeking information during discovery regarding the identity and motives of individuals or entities on whose behalf Smith allegedly initiated this action. We disagree.

The facts and procedural history underlying Northside's cross-appeal are essentially undisputed and are set forth in greater detail in *Smith I* and *Smith II*. But to summarize, the record shows that the Commissioners of Roads and Revenues of Fulton County passed a resolution in 1966, creating the Fulton County Hospital Authority (the "Authority"), which would "have and exercise all of the powers granted and prescribed in the Hospital Authority Laws."[3] The purpose of creating the

---

[2] *See, e.g.*, *Posey v. Med. Ctr.-W., Inc.*, 184 Ga. App. 404, 404 (361 SE2d 505) (1987) (addressing, upon remand from the Supreme Court of Georgia, issues in a primary appeal and cross-appeal on the merits that remained open following the reversal of our initial decision in the primary appeal); *Int'l Indem. Co. v. Enfinger*, 174 Ga. App. 268, 268 (1), (2) (329 SE2d 575) (1985) (addressing, following the Supreme Court's reversal of this Court's holding in the primary appeal, a cross-appeal on the merits that was deemed moot the first time the case was before us).

[3] *Smith II*, 302 Ga. at 518 (punctuation omitted).

Authority was to improve and increase hospital facilities to serve the community.[4] To that end, the Authority opened Northside Hospital, which it owned and operated for approximately 25 years.[5] But in the early 1990s, recognizing "the rapidly changing healthcare environment in which it operated," the Authority commissioned a study on the matter and ultimately determined that "the best way to improve the hospital's performance was to restructure through a long-term lease of the hospital and related assets for operation by a private, charitable, nonprofit corporation."[6] Thus, on November 1, 1991, the Authority executed a lease and transfer agreement (the "Agreement") with the newly formed Northside Hospital, Inc., a private, nonprofit corporation.[7] Under the Agreement, the Authority leased the hospital facilities and transferred all of its "Operating Assets" and "Existing Operations" for a term of 40 years in exchange for a yearly rent payment of $100,000.[8] The leased facilities

---

[4] *Id.*

[5] *Id.*

[6] *Id.* (punctuation omitted).

[7] *Id.*

[8] *Id.* at 518-19.

4

included the hospital, a surgery center, office buildings, and improvements.[9] Additionally, the Authority gave Northside the power to act on its behalf and operate the hospital subject to certain restrictions.[10] And each year since the Agreement was executed, the Authority reaffirmed its conclusion that its agreement with Northside promotes the public health needs of the community.[11]

Particularly relevant to the instant dispute, Northside entered into transactions—between 2011 and 2013—to acquire four privately owned physician groups.[12] Smith learned of these transactions in 2013, and he sent a letter to Northside and the Authority, entitled "Open Records Request," seeking access to financial statements and other documents related to the acquisitions.[13] In response, the Authority informed Smith that it did not possess any such documents, and Northside declined to comply with the request, contending that it was not subject to the Act

---

[9] *Id.* at 518.

[10] *Id.* at 519.

[11] *Id.*

[12] *Id.*

[13] *Id.*

because it was a private, nonprofit hospital.[14] Northside also notified Smith that, even if it were subject to the Act, the "highly sensitive" documents he requested would be statutorily exempt under several provisions of the Act, including the trade-secrets exception.[15]

Thereafter, Smith—an Atlanta attorney—brought this action to compel Northside to reply with his open records request.[16] Discovery ensued, and on November 18, 2013, Northside sent Smith a letter, requesting the name of the client or clients who engaged him and his law firm to pursue this action. The next day, Smith declined the request, noting that the Act requires public records to be made available to "any person" who requests them. Thus, Smith contended that this matter was focused solely on Northside's functions, its relationship with the Authority, and the documents in question, "not on anything concerning [him]."

Nevertheless, on December 3, 2013, Northside sent Smith a notice of its intent to depose him on December 11, 2013. And rather than responding to the request, Smith filed a motion for a protective order to nullify Northside's "improper

---

[14] *Id.*

[15] *Id.* 519-20.

[16] *Id.* at 520.

deposition notice." Specifically, Smith argued that the proposed deposition was irrelevant to the issues in the case because the Act makes public records available to anyone who requests them, and any individualized questioning of the requester is both unnecessary and inappropriate. Discovery continued and before the trial court ruled on his initial motion for a protective order regarding the deposition notice, Smith filed a second motion for a protective order, this time asking the court to prohibit *any* discovery regarding himself or the identity and purposes of his alleged clients. Following Northside's response brief in opposition to the motion and a hearing on the matter, the trial court ultimately issued the protective order. Specifically, as requested, the court's protective order prohibited "any discovery concerning [ ] Smith's purposes in bringing [this] action, or the identity and purposes of any of his alleged clients." Northside's cross-appeal, challenging the propriety of that order, follows.[17]

---

[17] When these cases were initially docketed in *Smith I*, the parties, as required by the rules of this Court, filed appellate briefs in Northside's cross-appeal. But after *Smith II*, the cross-appeal, Case No. A15A2304, was reinstated in this Court, and the parties filed new, revised appellate briefs according to this Court's ordinary briefing schedule that follows the docketing of a case. While we have considered all of the parties' briefs, we note that Northside's arguments are essentially the same in both of its briefs, except as otherwise discussed in note 22, *infra*.

The grant or denial of a motion for protective order "lies within the sound discretion of the trial court, and we will reverse the court's decision in this regard only when it has abused its discretion."[18] This is because a trial court has broad discretion to control all discovery matters.[19] And as to protective orders, a trial court will only abuse its discretion when its ruling is "unsupported by any evidence of record or [when] that ruling misstates or misapplies the relevant law."[20] That said, in Georgia, parties may obtain discovery regarding any matter, not privileged, "which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery."[21] With these guiding principles in mind, we will now address Northside's claim of error.

---

[18] *Mincey v. Ga. Dep't of Cmty. Affairs*, 308 Ga. App. 740, 744 (1) (708 SE2d 644) (2011).

[19] *See N. Druid Dev., LLC v. Post, Buckley, Schuh & Jernigan, Inc.*, 330 Ga. App. 432, 434-35 (1) (767 SE2d 29) (2014)("Trial courts are afforded broad discretion to control discovery . . . and this Court will not reverse a trial court's ruling on such matters absent an abuse of the discretion." (punctuation omitted)).

[20] *Lewis v. Lewis*, 316 Ga. App. 67, 68 (728 SE2d 741) (2012) (punctuation omitted).

[21] *Mincey*, 308 Ga. App. at 744-75 (1) (punctuation omitted).

Specifically, Northside argues that the trial court abused its discretion by issuing the protective order, thus precluding discovery regarding the identity and purposes of Smith's alleged client or clients, because doing so was contrary to Georgia law and the discovery sought is relevant to the Act's trade-secrets exception.[22] We find this argument unavailing.

In relevant part, OCGA § 50-18-71 (a) provides that "[a]ll public records shall be open for personal inspection and copying, except those which by order of a court of this state or by law are specifically exempted from disclosure." And our General Assembly *codified* the public policy underlying the Act as follows:

---

[22] In its revised appellate brief, submitted to this Court following *Smith II*, Northside argues for the first time that information about the identity and purposes of Smith and his alleged client or clients is relevant to Smith's credibility and subject to discovery for purposes of cross-examination. But Northside did not raise this argument before the trial court or this Court in *Smith I*, and thus, we decline to consider it now. *See OVIP, Inc. v. Blockbuster Textiles, LLC*, 289 Ga. App. 276, 278 (1) (656 SE2d 907) (2008) ("[I]ssues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on (below)." (punctuation omitted)). Regardless, we reject Northside's other arguments, set forth *supra*, because Smith's credibility as a trial witness is irrelevant to the court's determination as to whether the requested documents are public records or qualify for the trade-secrets exception.

9

The General Assembly finds and declares that the strong public policy of this state is in favor of open government; that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions. The General Assembly further finds and declares that there is a strong presumption that public records should be made available for public inspection without delay. This article shall be broadly construed to allow the inspection of governmental records. The exceptions set forth in this article, together with any other exception located elsewhere in the Code, shall be interpreted narrowly to exclude only those portions of records addressed by such exception.[23]

Further, the Supreme Court of Georgia has held that the right of access afforded by the Act is a "public right of the People as a whole[,]" rather than a private right vested in any particular person.[24] Indeed, as acknowledged by our Supreme Court, "[t]he

---

[23] OCGA § 50-18-70 (a).

[24] *Deal v. Coleman*, 294 Ga. 170, 184 (2) (b) (751 SE2d 337) (2013). While the Supreme Court in *Deal* addressed a statutory exception from inspection in a former version of the Act, that statutory provision is not relevant to the case at hand, and there have been no amendments to the Act so significant that the reasoning and analysis set forth in *Deal* as to the public nature of the right afforded by the Act is no longer applicable. *See id.* at 170-71, 174-75 (2) (b) (addressing whether OCGA § 50-18-72 (a) (47), which was added to the Act in 2012 and exempted certain records concerning a particular training program at a technical school from inspection, applied to a pending lawsuit).

purpose of Georgia's Open Records Act is to allow *the public* to evaluate the expenditure of *public funds* and to foster confidence in government through openness *to the public.*"[25]

Given these codified public policy concerns, the Act "treats all public records as subject to disclosure, except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection."[26] And as to actions for judicial enforcement of the Act, it provides that they "may be brought by *any person*, firm, corporation, or other entity."[27] Moreover, the Act does not "limit the authority to commence an enforcement action to persons who had made a request for records *or to persons with a special or personal interest in the requested records*."[28] Lastly, when an action to enforce the Act is brought, "the first inquiry is whether the

---

[25] *City of Atlanta v. Corey Entm't, Inc.*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004) (emphasis supplied) (punctuation omitted); *accord State Rd. & Tollway Auth. v. Elec. Transaction Consultants Corp.*, 306 Ga. App. 487, 488 (702 SE2d 486) (2010).

[26] *Corey Entm't, Inc.*, 278 Ga. at 476 (1) (punctuation omitted).

[27] OCGA § 50-18-73 (a) (emphasis supplied).

[28] *Deal*, 294 Ga. at 182 (2) (b) (emphasis supplied).

11

records are 'public records'"[29] as defined by the Act, and if so "the second inquiry is whether they are protected from public disclosure" under a statutory exception.[30]

Here, Northside concedes that the identity and purposes of Smith's client or clients have no bearing on whether he has standing to seek access to public documents via an open-records request. Indeed, the plain language of the Act provides that *any person* may bring an action to compel the disclosure of public records.[31] Nevertheless, Northside argues that it is entitled to discovery regarding those matters because the identity and purposes of Smith's client—and whether the client is a competitor of Northside who is "pursuing this case to gain economic value and for competitive purposes—is potentially dispositive of whether the records sought by Smith are trade secrets that are exempt from disclosure."

---

[29] *Hardaway Co. v. Rives*, 262 Ga. 631, 632 (1) (422 SE2d 854) (1992); *accord Bowers v. Shelton*, 265 Ga. 247, 249 (2) (453 SE2d 741) (1995).

[30] *Rives*, 262 Ga. at 632-33 (1); *accord Bowers*, 265 Ga. at 249 (2).

[31] *See supra* note 27 & accompanying text; *see also Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 52 (1) (806 SE2d 215) (2017) ("[W]hen the language of a statute is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly." (punctuation omitted)).

Although decided in a somewhat different factual context, the Supreme Court of Georgia's decision in *Atchison v. Hospital Authority of City of St. Marys*[32] is instructive in considering the issue before us. In *Atchinson*, the plaintiff, a Georgia resident, sought certain telephone records of a public entity for inspection under the Act.[33] But the trial court held that the records were not subject to inspection because the plaintiff was "only a nominal plaintiff acting in the real interest" of his employer, a Florida company.[34] The trial court further concluded that the Florida company, which was not a Georgia resident, was attempting to do, through its employee, that which it could not do for itself.[35] The Supreme Court of Georgia reversed, explaining that, in determining whether certain records are subject to inspection under the Act, "the judiciary must balance the interest of the public in favor of inspection against the interest of the public in favor of non-inspection in deciding this issue."[36] And in applying this balancing test, our Supreme Court held that prohibiting inspection of

---

[32] 245 Ga. 494 (265 SE2d 801) (1980).

[33] *See id.* at 494.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 495 (3).

13

records under the Act must be based on "the nature of the information" sought, not the connections of the person seeking the information with a nonparty.[37] Indeed, the Act does "not limit the authority to commence an enforcement action to persons who had made a request for records or to persons with a special or personal interest in the requested records."[38]

Turning to the instant case, the trial court, in granting the protective order limiting discovery, found, consistent with *Atchison*, that "the intentions and motivations behind an Open Records Act request are irrelevant[.]" The court also noted its prior finding, in dismissing a counterclaim Northside filed against Smith, that given the codified purpose of the Act, "permitting parties subject to [open records] requests to bring counterclaims regarding the motivation and purposes behind the requests for documents to such actions would have a chilling effect on citizens' rights to inspect public documents and ultimately their right to an open Georgia government."[39]

---

[37] *Id.*

[38] *See supra* note 28 & accompanying text.

[39] When it answered Smith's complaint, Northside asserted a counterclaim, alleging, *inter alia*, that Smith was engaged in a conspiracy with others to "commit the torts of unfair competition, interference with contractual relationships,

14

Nevertheless, in an attempt to overcome Georgia's strong, codified public policy in favor of open government and the presumption that public records should be made available to the public without delay,[40] Northside contends the protective order was contrary to Georgia law, which provides for a broad scope of permissible discovery. And Northside is correct that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action including the identity of persons having knowledge of any discoverable matter."[41] Moreover, is likewise true that "[i]t is within the trial court's

---

interference with ongoing and prospective business relationships, attempting to obtain business secrets under false pretenses, and pursuing a sham, false, and frivolous lawsuit in order to gain unfair and improper competitive advantage." These claims were based on Smith's alleged agreement to be used as a "stand-in" plaintiff to shield the identity and unlawful purposes of his client or clients. The trial court dismissed the counterclaim for several reasons, including that the Act already provides protections for trade secrets, the motivation behind a particular Georgia resident's request for public records is irrelevant, and permitting such a counterclaim would have a chilling effect on citizens' rights to inspect public documents. In granting the protective order at issue in this appeal, the trial court relied on much of the same reasoning.

[40] *See* OCGA § 50-18-70 (a).

[41] *Tenet Healthcare Corp. v. La. Forum Corp*., 273 Ga. 206, 210 (2) (538 SE2d 441) (2000) (punctuation omitted) (quoting OCGA § 9-11-26 (b) (1)); *accord Bowden v. The Med. Ctr., Inc.*, 297 Ga. 285, 290 (2) (a) (773 SE2d 692) (2015).

15

sound legal discretion to determine the permissible extent of discovery, keeping in mind that the discovery procedure is to be construed [forgivingly] in favor of supplying a party with the facts."[42] Nevertheless, a trial court has "*wide discretion* in the entering of orders permitting or preventing the use of discovery which oppressive, unreasonable, unduly burdensome or expensive, harassing, harsh, insulting, annoying, embarrassing, incriminating, or directed to *wholly irrelevant and immaterial* or privileged matters . . . ."[43]

Here, Northside complains that the trial court failed to acknowledge the forgiving standards "applicable to discovery and cross-examination[,]" and claims that the *specific* discovery it requested was relevant, in part, "to support its defenses and to test Smith's credibility as a witness." But as previously explained, Northside never argued to the trial court that it needed the requested discovery to challenge Smith's credibility, and we do not consider arguments made for the first time on

---

[42] *Tenet Healthcare Corp.*, 273 Ga. at 210 (2); *accord DeLoitte Haskins & Sells v. Green,* 187 Ga. App. 376, 378 (1) (370 SE2d 194) (1988).

[43] *Sechler Family P'ship v. Prime Grp., Inc.*, 255 Ga. App. 854, 857 (2) (567 SE2d 24) (2002) (emphasis supplied); *see Mead Corp. v. Masterack*, 243 Ga. 213, 215 (253 SE2d 164) (1979) ("[T]he trial court has a wide discretion in the entering of orders to prevent the use of discovery which is unreasonably burdensome, unduly expensive, or directed to irrelevant or immaterial matter.").

16

appeal.[44] And in any event, Northside fails to explain how Smith's credibility as a witness or even his testimony in general is relevant to whether the records at issue are subject to disclosure under the Act.

Northside also maintains that the discovery it seeks is relevant to its trade-secrets defense. In this regard, OCGA § 50-18-72 (a) (34) provides that "[p]ublic disclosure shall not be required for records that are . . . [a]ny trade secrets obtained from a person or business entity that are required by law, regulation, bid, or request for proposal to be submitted to an agency." And OCGA § 10-1-761 (4) defines "trade secrets" as

> information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information: (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

---

[44] *See supra* note 22.

Further, whether a particular type of information "constitutes a trade secret is a question of fact."[45]

Northside does not dispute that, regardless of whether Smith requested the documents at issue and initiated this action on behalf of one of its competitors or solely on his own behalf, it is still required to prove that the *documents* requested qualify as trade secrets under OCGA § 10-1-761 (4). Indeed, even if Smith initiated this action solely on his own behalf, Northside, as the defendant, has the burden of presenting evidence sufficient to satisfy both prongs of OCGA § 10-1-761 (4) in order to establish that these documents are trade secrets and exempt from disclosure.[46] As to those statutory requirements, Northside argues that the identity and purposes of Smith's alleged client, who Northside believes is one of its competitors, is "key" to demonstrating that the information at issue is (1) not commonly known, (2) derives economic value from not being disclosed, and (3) subject to reasonable efforts to maintain its secrecy.

---

[45] *State Rd. & Tollway Auth.*, 306 Ga. App. at 489 (punctuation omitted).

[46] *See Bacon v. Volvo Serv. Ctr., Inc.*, 266 Ga. App. 543, 544 (1) (597 SE2d 440) (2004) (quoting OCGA § 10-1-731 (4) and noting, in the context of an employment dispute, that if the defendant "does not prove both prongs of this test, it is not entitled to protection under the [Trade Secrets] Act.").

18

But even assuming Smith's client is a competitor of Northside, that competitor could only provide evidence as to whether it has access to the information, not whether it is commonly known to the public. Further, as to whether the requested information derives economic value from not being disclosed, Northside conceded at the hearing on the motion for a protective order that it could establish its trade-secrets defense without obtaining discovery as to the identity and purposes of Smith's client or clients.[47] Indeed, there is no requirement that a defendant present evidence regarding any particular competitor's economic interest in the information sought in order to establish that the information itself constitutes a trade secret. Lastly, it is unclear how Northside could establish its *own* efforts to maintain the secrecy of the documents at issue based on information regarding an alleged competitor. Presumably, only Northside would have knowledge of its own efforts in this regard.

In sum, while the Supreme Court's decision in *Atchison* did not specifically involve any exceptions from disclosure under the Act, we find its reasoning persuasive, at least when the trade-secrets defense is asserted. This is because, regardless of the identity and purposes of any interested third party or nonparty

---

[47] Specifically, after hearing Northside's arguments opposing the protective order, the trial court asked, "So you have other ways of establishing that your documents are trade secrets?" And Northside responded, "Yes, in every case."

19

competitor, the documents sought in an open-records request either contain trade secrets as defined by OCGA § 10-1-761 (4) or they do not. Thus, given the broad discretion a trial court has to control discovery matters; the minimal probative value, if any, of the identity and motives of Smith's alleged clients; and Georgia's strong, codified public policy in favor of open government as expressly promulgated by the General Assembly, we conclude that the trial court did not abuse its discretion in precluding Northside from seeking discovery regarding the identity and motives of Smith's alleged client or clients.[48]

[48] *See Douglas Asphalt Co. v. Linnenkohl*, 320 Ga. App. 427, 429 (1) (741 SE2d 169) (2013) (holding the trial court did not abuse its discretion in issuing a protective order limiting discovery when, *inter alia*, the appellant did not specify what information that the requested discovery would have revealed beyond what had already been disclosed); *Anderson v. Mergenhagen*, 283 Ga. App. 546, 552 (3) (642 SE2d 105) (2007) (holding the trial court did not abuse its discretion when it granted a motion to quash a subpoena seeking cell phone records when the information sought was not relevant or reasonably calculated to lead to the discovery of admissible evidence); *Dagel v. Lemcke*, 245 Ga. App. 243, 244-45 (2) (537 SE2d 694) (2000) (affirming the trial court's denial of a motion to compel certain discovery prior to ruling on a motion for summary judgment when the requested discovery was "immaterial" to the disposition of the motion); *Henson v. Am. Family Corp.*, 171 Ga. App. 724, 732 (10) (321 SE2d 205) (1984) (affirming the trial court's enforcement of previously imposed restrictions on discovery, noting that a "trial court has a wide latitude in determining what is and what is not germane to the issues; and in exercising this discretion, it may consider such factors as the relevancy of the information being sought and the likelihood that the discovery efforts in question are being made for purposes of harassment and intimidation rather than for bona fide discovery purposes").

For all these reasons, in Case No. A15A2304, we affirm the trial court's grant of Smith's motion for a protective order. Additionally, we remand Case No. A15A2303 for further proceedings consistent with the Supreme Court of Georgia's decision in *Smith II.*

*Judgment affirmed in Case No. A15A2304 and reversed and remanded in Case No. A15A2303. Barnes, P. J., Ellington, P. J., McFadden, P. J., Ray, McMillian, and Reese, JJ., concur.*