**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

May 13, 2026

# In the Court of Appeals of Georgia

A26A0774. FALCON MARKETING, LLC v. MURRAY et al.

A26A0775. WALTERS v. MURRAY et al.

BARNES, Presiding Judge.

These companion appeals arise out of a discovery dispute between the defendants and certain non-parties in a personal injury action. As part of that dispute, the trial court entered an order granting in part and denying in part non-party Falcon Marketing, LLC's ("Falcon") motion to quash a subpoena for the deposition of its company representative and the production of documents, denying the motion to quash a subpoena for the deposition of non-party Jessica Walters (Falcon's National Sales Director), and granting Falcon a protective order but with restrictions to its scope requested by the defendants. In Case No. A26A0774, Falcon challenges the trial

court's denial in part of its motion to quash, and in Case No. A26A0775, Walters challenges the court's denial of her motion to quash.[1] Both appellants also challenge certain terms of the protective order. For the reasons discussed below, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion in Case No. A26A0774. We affirm in Case No. A26A0775.

The record reflects that Sebrina Michael sued Stephen Murray, New Leaf Landscape Services, Inc., and John and Jane Doe defendants for damages arising from an automobile accident.[2] As part of her damages, Michael sought to recover the full value of her past and future medical expenses, including expenses for treatment provided by Ortho Sport & Spine Physicians, LLC ("Ortho Sport"). Ortho Sport is an orthopedic medical practice with locations in several states. See *Medernix v. Snowden*, 372 Ga. App. 48, 48 (903 SE2d 728) (2024).

---

[1] Falcon and Walters were entitled to directly appeal the trial court's order. See *WellStar Kennestone Hosp. v. Roman*, 344 Ga. App. 375, 377 n.6 (810 SE2d 600) (2018) ("[An] order denying a disinterested non-party's motion to quash or modify a subpoena is directly appealable under the collateral order doctrine.").

[2] In reciting the factual and procedural history of these companion appeals, we have taken into account the appellate records from both cases. See *Sentinel Offender Svcs. v. Glover*, 296 Ga. 315, 321 n.13 (766 SE2d 456) (2014) (reviewing courts may take judicial notice of the records in companion appeals).

During the ensuing litigation, the defendants served Falcon, a marketing agency that performed marketing services for Ortho Sport, with a subpoena and notice to take the deposition of a company representative under OCGA § 9-11-30(b)(6) ("Rule 30(b)(6)") accompanied with a list of deposition topics and requests for the production of documents. The defendants sought information about referrals to Ortho Sport by Michael's attorneys and other law firms, the efforts of Ortho Sport to market and solicit referrals from law firms, and the corporate structure of Falcon and its business relationship with Ortho Sport and its subsidiaries. Additionally, the defendants served Walters, Falcon's National Sales Director, with a subpoena and notice to take her deposition.[3]

---

[3] The defendants also served Ortho Sport and its claims manager, Medernix, LLC, with requests for production of documents and database materials. After a dispute arose over those discovery requests, the trial court entered an order granting the defendants' motion to compel production of the database report and other requested materials, as well as a protective order requiring redactions of patients' personal health information. Ortho Sport and Medernix appealed the trial court's orders to this Court. Relying on *Medernix*, 372 Ga. App. 48, we vacated those orders to the extent that they required Ortho Sport and Medernix to create and produce the database report and remanded for further proceedings consistent with our opinion. See *Ortho Sport & Spine Physicians v. Murray*, A24A1310, A24A1311, slip. op. at 5-6 (Ga. App. Sept. 13, 2024) (unpublished). While the defendants originally requested that Falcon produce the same database report, they later withdrew that request.

Falcon and Walters filed a joint motion to quash the subpoenas and for entry of a protective order, contending that the deposition topics and document requests sought irrelevant information for a car accident case and were overly broad and unduly burdensome in light of the scope and number of topics and requests. They further contended that to the extent that the discovery sought by the defendants was relevant, the proper source of the information was Ortho Sport, "not a nonparty marketing company and its employee."

In response to the motion to quash, the defendants, relying on LinkedIn profiles of Falcon and Ortho Sport employees, social media posts, deposition testimony, and other documents, alleged that Falcon was "an entity created and operated by Ortho Sport for the purposes of marketing to attorneys, soliciting attorney referrals of personal injury patients, and tracking those same referrals" so that Ortho Sport could "conceal its marketing and referral seeking efforts" and "evade discovery obligations." According to the defendants, Falcon possessed database information showing "how many referrals Ortho Sport has gotten from [Michael's] attorneys in this case, personal injury attorneys in general, and the amount of money Ortho Sport is making from those referral streams." Relying on our decision in *Medernix*, 372 Ga.

4

App. 48, the defendants asserted that the attorney referral information was discoverable because it was relevant to the bias, intent, and motive of the Ortho Sport physicians who treated Michael and would be testifying in the case.

Following a hearing, the trial court entered its order granting in part and denying in part the motion to quash. The trial court agreed with the defendants that attorney "referral information can be relevant to show the bias of a treating physician and is discoverable" and that the deposition topics and document requests were "reasonably calculated to lead to the discovery of evidence relevant to Ortho Sport and its physicians' bias, intent, and motive as well as the reasonableness and necessity of Ortho Sport's medical bills issued to [Michael]." The trial court, however, limited the scope and time frame covered by some of the Rule 30(b)(6) deposition topics and document requests. As to Walters, the trial court denied her motion to quash her deposition, finding that "she is likely to have knowledge regarding attorney referrals to Ortho Sport as well as discoverable information regarding Ortho Sport's efforts to market and solicit referrals from personal injury attorneys." Additionally, the trial court granted a protective order prohibiting the publication or distribution of Falcon's marketing materials outside of the case, "except that Defendants and/or their counsel

will be permitted to provide any part of Falcon['s] ... production to any other Court or judge on an in-camera basis as reasonably necessary." The trial court further specified that "[m]aterials as defined in this protective order are limited to documents produced by Falcon."

These companion appeals by Falcon and Walters followed.

*Case No. A26A0774*

1. Falcon contends that the trial court abused its discretion to the extent that the court denied its motion to quash the defendants' subpoena seeking the Rule 30(b)(6) deposition of its company representative and the production of documents.

"The scope of discovery under the Civil Practice Act is broad." *Gen. Motors v. Buchanan*, 313 Ga. 811, 814(2)(a) (874 SE2d 52) (2022). "Under OCGA § 9-11-26(b)(1), parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party." *Medernix*, 372 Ga. App. at 52(1). "The key phrase in this definition — 'relevant to the subject matter involved in the pending action' — has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other

6

matter that could bear on, any issue that is or may be in the case." *Bowden v. The Med. Ctr.*, 297 Ga. 285, 291(2)(a) (773 SE2d 692) (2015). And "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Gen. Motors*, 313 Ga. at 814–15(2)(a) (citation modified).

Parties may seek discovery from a non-party, including by means of depositions upon oral examination and requests for the production of documents. See OCGA §§ 9-11-26(a), 9-11-30(a) and (b)(6), 9-11-34(a) and (c)(1). The same relevancy standard applicable to discovery requests made to a party applies to requests made to a non-party. See *Medernix*, 372 Ga. App. at 52(1) (noting that based on OCGA § 9-11-34(c)(1), a party may request that a non-party produce documents that contain information falling within the scope of OCGA § 9-11-26(b)); *Sechler Fam. P'ship v. Prime Grp.*, 255 Ga. App. 854, 857(2) (567 SE2d 24) (2002) (declining to adopt a standard for reviewing discovery requests made to a non-party that differed from the standard for requests made to another party).

But the fact that certain records are nonprivileged and relevant does not automatically mean that they are discoverable. The trial court must determine whether the requested discovery is relevant and

7

material, but when parties seek discovery of unprivileged but sensitive materials, the trial court must balance the requesting party's specific need for the material against the harm that would result by its disclosure. It is a trial court's obligation to apply this balancing test to determine whether discovery of the requested sensitive materials would subject the producing party to annoyance, embarrassment, oppression, or undue burden or expense. And a party's request for information should be denied when the request is overly broad.

*Omni Healthcare v. Stacy Young Excavation*, 377 Ga. App. 85, 90-91(3) (921 SE2d 508) (2025) (citation modified). "In addition, where the requesting party has filed a subpoena requesting the production of documents, the court has the discretion to 'quash or modify the subpoena if it is unreasonable and oppressive[.]'" *Norfolk S. Ry. Co. v. Hartry*, 316 Ga. App. 532, 534 n.6 (729 SE2d 656) (2012) (quoting OCGA § 9-11-45(a)(1)(C)).

As with other discovery orders, we will reverse a trial court's ruling on a motion to quash a subpoena only if there is a clear abuse of discretion. *In re Whittle*, 339 Ga. App. 83, 85 (793 SE2d 123) (2016). See *Gen. Motors*, 313 Ga. at 815(2)(a). A trial court abuses its discretion only "when its ruling is unsupported by any evidence of record

or when that ruling misstates or misapplies the relevant law." *Smith v. Northside Hosp.*, 347 Ga. App. 700, 703 (820 SE2d 758) (2018) (citation modified).

Guided by these principles, we turn to Falcon's specific claims of error.

(a) Falcon contends that the trial court erred in denying its motion to quash because the court erroneously relied on Georgia precedent allowing for the discovery of information pertaining to the credibility and bias of a plaintiff's medical providers, including information about attorney referrals of patients to those providers. According to Falcon, that precedent might support discovery of such information from a medical provider like Ortho Sport, but not from other "sources far too attenuated in relation to the actual issues and defenses in this case," such as a marketing agency like itself.

Setting aside for the moment the question from whom the information can be obtained, we begin by noting that as part of discovery, the defendants were entitled to seek information reasonably calculated to lead to the discovery of admissible evidence relating to the credibility and bias of the Ortho Sport physicians who treated Michael, including information about attorney referrals to those treating physicians and to their

9

practice. As we recently held in *Medernix*, attorney referral information can be relevant to show the bias of a treating physician and is discoverable:

> [A] treating physician's "financial interest in the outcome of the case is highly relevant to the issue of his credibility and potential bias." *Stephens v. Castano-Castano*, 346 Ga. App. 284, 291(2)(a) (814 SE2d 434) (2018) (physical precedent only). See OCGA § 24-6-622 ("The state of a witness's feelings towards the parties and the witness's relationship to the parties may always be proved for the consideration of the jury."); *Lloyd v. State*, 40 Ga. App. 230, 231 (149 SE 174) (1929) ("The intent or motive of a witness is a legitimate subject of inquiry, and the fact that a witness, in his connection with any pending litigation, is influenced by financial considerations may affect his credit and diminish the weight of his testimony.") (citations and punctuation omitted). And evidence that the plaintiff's counsel has a close relationship with and a history of making referrals to the plaintiff's treating physician can be relevant to show the bias of that physician. See *Canada v. Shropshire*, 232 Ga. App. 341, 342-343 (501 SE2d 860) (1998). Cf. *Stephens*, 346 Ga. App. at 291-293(2)(b) (814 SE2d 434) (concluding that trial court was authorized to find that evidence that the plaintiff's attorney referred the plaintiff to her treating physician, standing alone, was not "sufficient to affect [the physician's] credibility or to show bias" and, without more, was irrelevant and inadmissible). Thus, documents reasonably calculated to lead to this type of financial information concerning a treating physician's bias would be discoverable.

372 Ga. App. at 54–55(1).[4] See *Chrysler Grp. v. Walden*, 303 Ga. 358, 364(II)(A), 371(II)(B) (812 SE2d 244) (2018) (noting that an opposing party's expert witness can be cross examined "about how often he has been hired by the counsel in the case and how much he had been paid," and holding that "witnesses' compensation may be relevant and admissible to show potential bias . . . depending on the facts of the case" (emphasis omitted)); *Harrison v. Regents of Univ. Sys. of Ga.*, 99 Ga. App. 762, 764-766(1) (109 SE2d 854) (1959) (holding that party was entitled to cross examine expert witness about whether he "uniformly" testified for one side in litigation). See also *Salkic v. Heartland Express*, 813 Fed. Appx. 444, 447 (11th Cir. 2020) (concluding that district court did not err in allowing treating physician to be cross examined about the high percentage of his surgical patients who were involved in litigation because it was relevant to the issue of the physician's bias); *ML Healthcare Servs. v. Publix Super Markets*, 881 F3d 1293, 1302–03 (11th Cir. 2018) ("A jury might infer that Plaintiff's doctors were incentivized by ML Healthcare's referral and payment arrangement to

---

[4] In *Medernix*, we concluded that the defendants' discovery request for a specific database report was overly broad, as the report would have included, among other things, detailed financial and medical information about every Ortho Sport patient for every medical treatment received at every clinic location and the names of all sources of patient referrals (whether attorneys or otherwise). See *Medernix*, 372 Ga. App. at 55(1).

provide testimony that was more favorable to Plaintiff than it otherwise would have been. If so, the jury would have found bias, which is clearly a relevant consideration in evaluating a witness's credibility.").

Following *Medernix*, we further addressed the scope of discovery relating to a treating physician's bias in *Omni Healthcare*, 377 Ga. App. 85. In that case, we held that the prices for which Omni Healthcare, a third-party medical "factoring" company,[5] purchased the accounts receivables of the plaintiff's medical providers was relevant to show the bias of those medical providers and that Omni could be compelled to produce the pricing information. Id. at 92-94(3)(b). We explained:

> Here, as in *Medernix*, the pricing information is relevant to bias, intent, or motive. We do not see a material difference in the potential bias of [the plaintiff's] medical providers simply because Omni now holds [the plaintiff's] receivables. Documents showing that [plaintiff's] counsel have close relationships with certain medical providers who may profit by selling their receivables to Omni, who may itself also profit by collecting after a successful lawsuit may show the bias, intent, or motive of these medical providers.

---

[5] "[T]he business of purchasing accounts receivable is known as 'factoring.'" *Omni Healthcare*, 377 Ga. App. at 86(1) (citation modified).

Id. at 93(3)(b).

Falcon, however, maintains that *Medernix* and *Omni Healthcare* are distinguishable because Falcon is neither a medical provider nor a medical funding company, but rather a third-party marketing vendor at arms length from Ortho Sport. Consequently, Falcon asserts that its connection to Ortho Sport is too attenuated to justify compelling it to produce information regarding Ortho Sport's referral arrangements with personal injury attorneys and that the defendants must instead seek that information only from Ortho Sport. We disagree.

Nothing in *Medernix* or *Omni Healthcare* limited discovery of information pertaining to a medical provider's potential bias to the medical providers themselves or to medical funding companies. Those cases instead focused on the relevancy of the information that was sought, and, as indicated in *Omni Healthcare*, the relevancy of that information does not change simply because a company other than the medical provider "now holds" that information. *Omni Healthcare*, 377 Ga. App. at 93(3)(b). Furthermore, in seeking discovery from Falcon, the defendants pointed to LinkedIn profiles and other documents indicating that Falcon does not stand at arms length from Ortho Sport. Rather, those documents suggest that Falcon and Ortho Sport

share employees and the same general counsel and that Falcon collects and manages referral data for Ortho Sport and markets to attorneys on its behalf, thereby allowing Ortho Sport to maintain that it does not market directly to attorneys and does not possess any marketing documents reflecting the same. While Falcon disputes the defendants' allegations regarding its relationship with Ortho Sport, the defendants are entitled to obtain discovery to flesh out the scope and nature of that relationship. See *Bowden*, 297 Ga. at 291(2)(a) (noting that when determining the "permissible scope of discovery," courts must bear in mind that "the discovery procedure is to be construed liberally in favor of supplying a party with the facts" (quotation marks omitted)). Based on the record before it, the trial court acted within its broad discretion in applying *Medernix* and *Omni Healthcare* and concluding that information pertaining to Ortho Sport's referral arrangements with personal injury attorneys was discoverable from Falcon.[6]

---

[6] Falcon also summarily asserts that "[j]ust five of 69 (including subparts) [deposition] topics (nos. 3, 20, 24, 25, and 28), and four of 53 (including subparts) document requests (nos. 1, 3, 9, and 10) are related to referral information." But "mere conclusory statements are not the type of meaningful argument contemplated by our rules," *Freebirds LLC v. Coca-Cola Co.*, 366 Ga. App. 443, 451(2)(b) (883 SE2d 388) (2023) (citation modified), and we will not cull the record on Falcon's behalf to independently evaluate each and every discovery topic and document request for relevance. See *McCalla Raymer, LLC v. Foxfire Acres*, 356 Ga. App. 117, 128(11) (846

(b) Even if attorney referral information is discoverable, Falcon argues that the trial court nevertheless erred in failing to quash certain deposition topics and document requests because they sought other information that was irrelevant, overly broad, unduly burdensome, vague, and harassing.

(i) In deposition topic no. 2, the defendants sought information about the corporate structure of Falcon and its general organization as a business. Falcon argues that the deposition topic seeks information that is not relevant to any issues in the case and that its Rule 30(b)(6) representative therefore should not be subject to questioning about those issues.

As previously noted, "relevant" is construed broadly in the context of discovery "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case," *Bowden*, 297 Ga. at 291(2)(a), and the fact that the information may be inadmissible at trial does not preclude its production "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Omni Healthcare*, 377 Ga. App. at 90(3)

SE2d 404) (2020) ("[T]he appellant bears the burden of showing error affirmatively by the record, and that it is not the appellate court's job to cull the record on behalf of a party." (citation modified)). To the extent that Falcon discusses specific deposition topics and document requests, we address those infra in Division 1(b).

(quotation marks omitted). In deposition topic no. 2, the defendants seek to elicit information from Falcon's Rule 30(b)(6) representative that will shed light on whether Falcon is independent of Ortho Sport or was created and controlled by Ortho Sport to carry out its marketing and solicitation functions to attorneys. Given the broad scope of discovery, we cannot say that the trial court abused its discretion in concluding that the defendants could depose Falcon's representative about the corporate structure and organization of the company, as the discovery of information about whether Falcon is controlled by Ortho Sport is reasonably calculated to lead to admissible evidence relevant to the bias, intent, and motive of the Ortho Sport treating physicians. See *Omni Healthcare*, 377 Ga. App. at 93–94(3)(b); *Medernix*, 372 Ga. App. at 54–55(1).

(ii) In deposition topic no. 4, the defendants sought information about the software and databases utilized by Falcon and who owned the licenses for the software. Falcon argues that such information is irrelevant. But questions to Falcon's Rule 30(b)(6) representative about this topic will assist the defendants in identifying any computer systems utilized by Falcon to track attorney referrals to Ortho Sport and in determining whether those systems are owned and controlled by Falcon or Ortho

Sport. As with deposition topic no. 2, the trial court acted within its discretion in finding that topic no. 4 was reasonably calculated to lead to the discovery of admissible information relevant to Ortho Sport's bias, intent, and motive. See *Omni Healthcare*, 377 Ga. App. 93– 94(3)(b); *Medernix*, 372 Ga. App. at 54–55(1).

(iii) Falcon also challenges on relevancy grounds deposition topic no. 29. In that topic, the defendants sought to question Falcon's Rule 30(b)(6) representative about "all information" in the company's possession "regarding the reasonable and necessary medical bills which are customary in the medical field for the types of services rendered to . . . Michael, specifically including average acceptance rates of the involved providers in satisfaction of their bills."

"It is true that to recover medical expenses in a personal injury action, a plaintiff . . . must show that the expenses arose from the injury sustained and were reasonable and necessary." *Medernix*, 372 Ga. App. at 53(1). Consequently, as we explained in *Medernix* and *Omni Healthcare*,

> the amount charged, wrote off, adjusted, or accepted as payment in full from other patients for the same types of treatment *at the same medical facility during the same general time period* as the plaintiff may have some relevance — particularly in the broad discovery sense — to the

17

reasonableness and necessity of the charges for the plaintiff's care and thus be discoverable.

*Omni Healthcare*, 377 Ga. App. at 94(3)(c) (citation modified). See *Medernix*, 372 Ga. App. at 53(1). But deposition topic no. 29 is not limited to medical billing information for other patients who received treatment at the same medical facility during the same general time period as Michael. Accordingly, we vacate the trial court's order to the extent that it denied Falcon's motion to quash deposition topic no. 29 and remand for the court to narrow the scope of the topic consistent with *Medernix* and *Omni Healthcare*.

(iv) Falcon argues that several deposition topics are overly broad because they seek information from its Rule 30(b)(6) representative about its relationship with "non-party entities." However, at the hearing on Falcon's motion to quash, the defendants' counsel identified the listed entities and explained who they were and why information about their relationship with Falcon would be relevant and discoverable. On appeal, Falcon makes the blanket assertion that discovery regarding its relationship with those entities is overly broad without any further explanation and without engaging with the arguments raised by the defendants' counsel at the hearing

18

that were relied upon by the trial court. Under these circumstances, Falcon has failed to show that the trial court abused its discretion in denying its motion to quash deposition testimony on these topics. See *Est. of Tomlinson v. Houston Healthcare*, 372 Ga. App. 587, 600(1)(b)(iii) n.8 (905 SE2d 664) (2024) ("Mere conclusory statements are not the type of meaningful argument contemplated by our rules," and "cogent legal analysis is, at a minimum, a discussion of the appropriate law as applied to the relevant facts" (citation modified)).

(v) Document request no. 7 sought any forms or documents bearing the handwriting or signature of Michael or her counsel. Falcon challenges the request on relevancy grounds, but if it possesses any such forms or documents as part of its marketing work for Ortho Sport, discovery of such information would be reasonably calculated to lead to admissible evidence relevant to the bias, intent, and motive of the Ortho Sport treating physicians. See *Omni Healthcare*, 377 Ga. App. at 93–94(3)(b); *Medernix*, 372 Ga. App. at 54–55(1).

(vi) Document request no. 19 sought "[a]ny and all other documentation in your possession with regard to [Michael] or her past or present legal team." The trial court granted in part Falcon's motion to quash this document request, ruling that the

request would be "limited to documents involving [Michael] and this case." On appeal, Falcon contends that the document request is impermissibly vague, but we conclude that the request was sufficiently narrowed by the trial court to cure any vagueness problem. See generally *S. Outdoor Promotions v. Nat'l Banner Co.*, 215 Ga. App. 133, 135(3) (449 SE2d 684) (1994) ("The discovery notice should be specific enough in its demands to relate the documents sought to the questions at issue" (citation modified)). Compare *Omni Healthcare*, 377 Ga. App. at 96(3)(c)(ii) (concluding that document request seeking "all documents, correspondence and/or emails with any person or entity related to [the plaintiff]" was impermissibly vague, as the request would require the producing party "to simply guess as to what person and entities may be 'related' to [the plaintiff]" (citation modified)).[7]

---

[7] Falcon also asserts without elaboration that deposition topic no. 30 is irrelevant because it seeks "information on social gatherings" and that document request no. 17 is irrelevant because it seeks "phone calls generated after regular work schedules." Falcon, however, paraphrases topic no. 30 and request no. 17 without addressing the more narrow language found in the actual topic and request or presenting any argument predicated on that specific language. Nor does Falcon discuss the fact that the trial court granted in part its motion to quash and narrowed that topic and request. By failing to take account of or engage with the specific language of deposition topic no. 30 and document request no. 17 as modified by the trial court, Falcon has failed to demonstrate that the trial court abused its discretion in determining that the information was relevant and discoverable. See *Arnold v. Fairway Mgmt.*, 376 Ga. App. 34, 44(2)(b)(iii) (918 SE2d 56) (2025) ("Legal argument

2. Falcon argues that the trial court abused its discretion by entering a protective order that did not cover deposition testimony and included a carve-out allowing the defendants and their counsel to submit the discovery for in-camera inspection in future cases. We conclude, however, that Falcon waived this argument.

At the hearing on Falcon's motion to quash, the following colloquy occurred after the trial court ruled on Falcon's objections to the deposition topics and discovery requests:

> THE COURT: What about any kind of protective order?
>
> [FALCON'S COUNSEL]: I mean, of course, we would request one. I think the court said we have to have one.
>
> THE COURT: Yeah. So, you want to draft that as well?
>
> [DEFENDANTS' COUNSEL]: Sure. ...
>
> ....
>
> THE COURT: So, what else do we need to talk about the contours of with this?

---

requires, at a minimum, a discussion of the appropriate law as applied to the relevant facts" (citation modified)). See also *A.D.A. v. Xytex Corp.*, ___ Ga. App. ___, ___ (926 SE2d 303) (2026) ("We will not speculate or make arguments on a party's behalf; to do so would improperly change this Court's role from disinterested decision-maker to appellate advocate." (citation modified)).

[DEFENDANTS' COUNSEL:] I will draft a proposed protective order. What it will say is what I said on the record which is limited, cannot be disseminated outside of this case with the only caveat being we can show it to other judges in chambers to the extent there is a denial that these things exist. I don't like the idea of the entire deposition being, like the deposition testimony, being protected. I don't think that makes as much sense as the documents.

THE COURT: I thought we were talking about the documents.

[DEFENDANTS' COUNSEL] That's what I'm talking about, but I anticipate that Falcon . . . would like the whole transcript to be sealed. So, I'm just trying to have this discussion now. I don't want to hold up any of it.

[FALCON'S COUNSEL]: I think we will just have to see what comes out.

THE COURT: Well, right now I just want a protective order as to the documents.

[DEFENDANTS' COUNSEL]: Okay.

THE COURT : If you want a protective order as to the depositions, you're going to have to file a motion about that.

[DEFENDANT'S COUNSEL] : Okay.

[FALCON'S COUNSEL] : Okay.

[DEFENDANTS' COUNSEL]: Fair enough.

[FALCON'S COUNSEL]: Thank you.

It is well settled that issues not raised in the court below are waived on appeal, *Wachovia Ins. Servs. v. Fallon*, 299 Ga. App. 440, 449(5)(b) (682 SE2d 657) (2009), and that "[a] party cannot acquiesce in a procedure by a trial court and then complain of it. Failure to object to the procedure amounts to a waiver." *Gnam v. Livingston*, 353 Ga. App. 701, 703(2) (839 SE2d 200) (2020) (citation modified). At the hearing, Falcon's counsel made no objection to the exclusion of deposition testimony from the protective order, stated that the parties would "just have to see what comes out" at the depositions, and responded "okay" when the trial court ruled that if the parties wanted a protective order for deposition testimony, they would need to "file a motion about that." Additionally, when the defendants' counsel stated that he would draft the protective order to include a carve out allowing *in-camera* inspection in other cases, Falcon's counsel did not object. Under these circumstances, Falcon waived its arguments challenging the protective order. See id.

*Case No. A26A0775*

3. Walters, Falcon's National Sales Director and its former Regional Marketing Manager, argues that the trial court abused its discretion by failing to quash the defendants' subpoena for her deposition.[8] Specifically, she contends that the trial court erroneously relied on precedent allowing for the discovery of information pertaining to the credibility and bias of a plaintiff's treating medical providers, including information about attorney referrals of patients to those providers, and erroneously extended that precedent to Falcon and to her as a Falcon employee. In so contending, Walters relies on the same argument raised by Falcon that we discussed and rejected supra in Division(1)(a). Accordingly, Walters has failed to show that the trial court abused its discretion in denying her motion to quash.

4. Walters also maintains that the trial court erred by entering a protective order that did not cover her deposition testimony. However, Walters was represented by the same counsel as Falcon at the hearing on the motion to quash, and she therefore waived her argument regarding the protective order for the same reasons discussed

---

[8] The subpoena to Walters did not require her to produce any documents.

supra in Division 2.

*Judgment affirmed in part, vacated in part and case remanded with direction in A26A0774. Judgment affirmed in A26A0775. Markle and Hodges, JJ., concur.*